2001 UT App 232

**Richard PACK, Plaintiff and Appellee,**

v.

**Ronnie W.A. CASE and Shain Case dba Ron Case Roofing, Defendants and Appellants.**

No. 990616–CA.

Court of Appeals of Utah.

July 27, 2001.

John Dustin Morris, Salt Lake City, for Appellants.

F. Kevin Bond and Budge W. Call, Salt Lake City, for Appellee.

Before Judges JACKSON, DAVIS, and THORNE.

## OPINION

DAVIS, Judge:

¶ 1 Appellants Ronnie W.A. Case and Shain Case, dba Ron Case Roofing (Case), appeal the trial court's judgment awarding appellee Richard Pack (Pack) $34,801.39 based on its conclusion that Case breached a contractual guaranty of warranty. We affirm in part, reverse in part, and remand for recalculation of the amount awarded to Pack.

## BACKGROUND

¶ 2 The parties do not challenge the trial court's findings of fact; therefore, "we recite those facts in accordance with the trial court's findings."[2] *J.V. Hatch Constr., Inc. v. Kampros*, 971 P.2d 8, 9 (Utah Ct.App. 1998).

¶ 3 Pack entered into a written contract with Case to install a roof, with a life expectancy of twenty years, on Pack's home. Pack and Case agreed that the roofing, labor, and materials would cost $2.25 per square foot, and estimated the roof would cover 4,000 square feet. The contract terms required Pack to pay one-half of the total cost before construction started. Accordingly, Pack issued a check to Case for $4,500.00, and Case began construction of the roof in late June of 1994. The contract required Pack to pay the remainder upon completion of the job, at which time a measurement of the roof's actual square footage would determine the balance owed to Case. The contract was silent as to the exact details of this calculation.

¶ 4 The contract contains several other relevant provisions. Paragraph 11 is a warranty clause which guarantees the new roof for two years after the original completion date. This provision requires Case to "repair any defect from faulty workmanship for the period of the guarantee at no charge to the property owner." However, paragraph 11 provides that non-payment of the contract balance for more than thirty days after com-

2. Case argues that the trial court abused its discretion in finding that Case was only entitled to $3,200.00 for extra work he performed on the roof; however, Case relies upon the finding as the basis for his argument. Thus, for the purpose of our factual recitation, we treat the finding as unchallenged.

pletion of the roof voids ' all warranties. Paragraph 18 states: "All roof repairs or maintenance during the warranty period on warranted roofs must be done by Contractor to maintain Contractor's warranty." Finally, paragraph 27 provides that the prevailing party in a lawsuit "shall be entitled to an award of attorneys fees and costs, including witness fees, professional experts fees and such other costs to prosecute or defend any action described [in the Contract]."

¶ 5 During installation of the roof, workers engaged in other aspects of constructing the home damaged a portion of the partially installed roof. Pack's son, who was assisting his father with construction of the home, authorized Case to make whatever extra repairs necessary to fix this damage. Neither Pack nor Case discussed the price for the extra work at this time. Case completed construction of the roof, including the extra work, in September 1994.

¶ 6 On November 30, 1994, Case billed Pack with an invoice for $10,750.00. This amount reflected a total cost of $15,250.00, minus the $4,500.00 already payed by Pack. Case billed for a total of 5,000 square feet at $2.25 per square foot (equaling $11,250.00) and an additional $4,000.00 for the extra repair work.

¶ 7 Pack disputed the amount of square footage in the invoice and measured the roof with his son. Pack's measurement indicated that Case had completed only 3,900 square feet of roofing. Based on this figure, Pack sent a check to Case for $4,275.00. (3,900 × $2.25 = $8,775.00 minus $4,500.00 = $4,275.00). Pack did not address the extra repair work at this time.

¶ 8 In the spring of 1995, Pack and Case had representatives meet and measure the roof together. At this time, the representatives agreed that the total square footage was actually 4,200. This left a balance of $675.00 to be paid by Pack, not including the extra repair work. Pack disputed this figure, because he claimed that the existence of skylights on the roof diminished the amount of roofing actually installed to something less than 4,200 square feet. As a result, Pack did not pay the $675.00.

¶ 9 Shortly thereafter, the roof developed significant leaks. Pack and his son patched portions of the roof to avoid further damage to the inside of the home. Pack eventually notified Case about the leaks and requested that Case repair the leaks. However, Case refused to do any repair work and commenced a small claims court action to collect the $675.00 plus the $4000.00 for the extra repair work. On August 29, 1996, Pack filed a lawsuit alleging breach of contract, negligence, and breach of warranty. Case's small claims court action was consolidated into this action.

¶ 10 On October 17, 1996, Case served its first set of interrogatories, requests for admissions, and requests for production of documents. Included were requests for the names of all persons who worked on or supplied materials, in any capacity, for the construction of the Pack house. On January 7, 1997, Case filed a motion to compel, based on Pack's failure to respond completely, requesting that the court order Pack to complete the interrogatories and provide the requested information. The court denied this motion.

¶ 11 The court conducted a pretrial conference and set June 20, 1997, as the final date for designating witnesses. On June 20, 1997, Pack supplemented his designation of witnesses to include Richard Nelson, a Salt Lake City building inspector. At trial, the court qualified Mr. Nelson as an expert and allowed him to testify. Case objected to Mr. Nelson's testimony based on his qualifications and because Pack had not provided Mr. Nelson's name in any previous discovery requests. The court overruled this objection.

¶ 12 At the conclusion of the trial, the court found that Case had improperly installed the roof. In addition, the court ruled that Pack's failure to pay Case the amount due under the contract and for the extras, and Pack's attempts to repair the roof, did not void the contractual warranty. Thus, the court concluded that Case breached his guaranty of warranty on the roof. The court determined that in order to provide Pack with a 20–year roof, a new roof needed to be installed, and the total cost of conforming to

the warranty was $32,255.26.[3] The court also awarded Pack one hundred percent of his attorney fees, making the total amount owed to Pack $40,131.84.

¶ 13 The court also determined that Pack owed Case for the repair work that was done on the roof and $675.00 on the original contract. However, although Pack did not dispute the amount that Case claimed for the repairs,[4] the court found that Case was entitled to $3,200.00 for the extra work rather than the $4,000.00 claimed by Case. The court calculated the $3,200.00 figure by noting that Case's original invoice for 5,000 square feet was inflated by twenty percent. Thus, the court elected to reduce the $4,000.00 requested for extra repairs by an equal twenty percent, making $3,200.00 the total amount for the extra work. The court acknowledged that this determination was "pretty arbitrary."

¶ 14 Finally, the court found that Case was entitled to $1,455.00 (twenty percent of its claim) for costs and attorney fees, by estimating that twenty percent of its total trial time was spent by Case proving those claims on which it prevailed. Thus, the court determined that the total amount owed to Case was $5,330.00. The court then offset this amount from the $40,131.84 that Case owed Pack resulting in an award to Pack of $34,801.39.

¶ 15 Case appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 16 Case first argues that the trial court erred by enforcing the warranty provision of the contract. "Interpretation of the terms of a contract is a question of law. Thus, we accord the trial court's legal conclusions regarding the contract no deference and review them for correctness." *Nova Cas. Co. v. Able Constr. Inc.*, 1999 UT 69, ¶ 6, 983 P.2d 575. Next, Case argues that the

trial court erred when it denied Case's motion to compel discovery. We review the trial court's denial of the motion to compel under an abuse of discretion standard. *See Roundy v. Staley*, 1999 UT App 229, ¶ 5, 984 P.2d 404. Case also argues that the trial court erred when it allowed Richard Nelson to testify as an expert witness. We review the trial court's determination regarding the admissibility of expert testimony under an abuse of discretion standard. *See Dikeou v. Osborn*, 881 P.2d 943, 947 (Utah Ct.App. 1994). Case next asserts that the trial court erred when it arbitrarily reduced the amount of money that Pack owed Case for the extra work done on the roof. "We uphold a lower court's findings of fact unless the evidence supporting them is so lacking that we must conclude the finding is 'clearly erroneous.'" *Jeffs v. Stubbs*, 970 P.2d 1234, 1244 (Utah 1998) (citations omitted). Finally, Case argues that the trial court erred in its assessment/allocation of attorney fees between the parties. "'The standard of review on appeal of [the amount of] a trial court's award of attorney fees is patent error or clear abuse of discretion.'" *Keith Jorgensen's, Inc. v. Ogden City Mall Co.*, 2001 UT App 128, ¶ 11, 26 P.3d 872 (citation omitted).

### I. Breach of Warranty

¶ 17 Case argues that the trial court erred in ruling that Pack's actions did not void the contractual warranty. Specifically, Case argues that Pack voided the contractual warranty by 1) not paying the full amount demanded by Case, and 2) attempting to repair the roof during the warranty period.[5]

### A. Pack's Failure To Pay Full Amount Demanded By Case

¶ 18 "When one party to a valid contract commits an 'uncured material failure' in its performance of the contract, the non-failing party is relieved of its duty to

---

3. This included the cost to repair stucco damaged by the improperly installed roof.

4. Pack argued that he had no liability at all to Case for the extra work.

5. In support of his argument, Case relies upon provisions contained in paragraphs 11 and 18 of

the contract: "Non–Payment of the contract balance for more than 30 days after completion or substantial completion voids all warranties, express or implied.... All roof repairs or maintenance during the warranty period or warranted roofs must be done by Contractor to maintain Contractor's warranty."

continue to perform under the contract." *Aquagen Int'l Inc. v. Calrae Trust*, 972 P.2d 411, 414 (Utah 1998) (quoting Restatement (Second) of Contracts § 237 (1981)). We look to the following factors to determine whether a failure was material, thus relieving the non-failing party of its duty to continue to perform under the contract:

> "(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

*Cache County v. Beus*, 1999 UT App 134, ¶ 37, 978 P.2d 1043 (quoting Restatement (Second) of Contracts § 241 (1981)).

¶ 19 Here, the trial court found "that Richard Pack has failed to pay amounts due under the roofing agreement in the amount of $675.00 on the square footage portion of the contract and in the amount of $3,200 on the extras." However, the court concluded that Pack's "failure to make payment on the amounts due under the contract and for the extras ... do[es] not negate the contractual warranty."[6] While the trial court does not explain how it arrived at the above determination, we conclude that Pack's failure to pay the $675.00 was not a material failure, and Case was not relieved from his duty to continue to perform under the contract.

¶ 20 First, Pack's failure to pay the $675.00 would not seriously deprive Case "of the benefit which he reasonably expected." *Cache County v. Beus*, 1999 UT App 134 at ¶ 37, 978 P.2d 1043. Specifically, the terms of the contract stated that the balance due on the contract would be calculated, by computation of the total square footage of the roof, at the end of the job. The contract is silent as to whose computation would be final and binding. Thus, Case could not have reasonably expected his measurement to be the final and binding measurement upon which the balance would be determined.[7] Moreover, Pack tendered $4,275.00—the balance owed to Case based upon Pack's measurement of the roof—shortly after completion of the roof. Thus, Case was not "deprived of the benefit which he reasonably expected" because Pack tendered a reasonable sum based upon his measurement of the roof and because Case could not reasonably expect his measurement to be the final and binding measurement. *Id.*

¶ 21 Second, Case could be adequately compensated for that part of the benefit which he was deprived. Specifically, as evidenced by the trial court's ruling, Case could be adequately compensated for Pack's failure to pay by an award of damages.

¶ 22 Third, Pack would suffer disproportionate forfeiture if his failure to pay the disputed amount was a material failure. " '[F]orfeiture' is used to refer to the denial of compensation that results when the obligee loses his right to the agreed exchange after he has relied substantially as by preparation or performance on the expectation of that exchange." Restatement (Second) of

---

6. The trial court's conclusion suggests that it considered the agreement for the extra work as separate from the original contract.

> A valid modification of a contract or lease requires a meeting of the minds of the parties, which must be spelled out, either expressly or impliedly, with sufficient definiteness.... As Corbin notes, when parties have not agreed on a reasonable price or a method for determining one, the agreement is too indefinite and uncertain for enforcement.

> *Richard Barton Enters., Inc. v. Tsern*, 928 P.2d 368, 373 (Utah 1996) (citations and quotations omitted). Here, the parties did not agree "on a reasonable price or a method for determining one" regarding the extra work. *Id.* Thus, the agreement for the extras was "too indefinite and uncertain for enforcement." *Id.* Consequently, we confine our review of whether Pack's breach was material to the $675.00 owed on the original contract.

7. We also note that Case's initial "measurement" was inflated by at least 800 square feet.

Contracts § 229 cmt. b (1981). Here, Pack substantially performed his duty by paying $8,775.00 of an unliquidated balance. Further, if Pack's failure to pay the disputed $675.00 were considered material, Pack would be denied compensation because the roof, as installed, had significant defects and was not the bargained-for twenty-year roof.

¶ 23 The fourth factor in determining the materiality of Pack's failure to pay the disputed amount—the likelihood that Pack would cure his failure—weighs in favor of Case. Specifically, as evidenced by Pack's ongoing denial of liability for the disputed $675.00, it was unlikely that Pack would have cured his failure to pay Case. However, while this factor weighs in favor of a finding of a material failure, we do not consider it dispositive. See Restatement (Second) of Contracts § 241 cmt. a (1981) (stating materiality is to be determined "in light of the facts of each case in such a way to further the purpose of securing for each party his expectation of an exchange or performances").

¶ 24 Fifth, Pack's failure to perform comports with standards of good faith and fair dealing. As stated above, Pack measured the roof and tendered the amount he felt he owed on the contract. Pack's measurement of the roof did not include the square footage of the skylights, which obviously did not have roofing placed over them. Thus, Pack's failure to pay was based upon a good faith belief that the skylights should not be included in the total square footage of roofing work actually completed. Thus, Pack's failure to pay the $675.00 comports with the standards of good faith and fair dealing.

¶ 25 For the above reasons, we conclude that Pack's failure to pay the disputed sum of $675.00 was not a material failure, and Case was not excused from performing under the warranty.[8]

### B. Pack's Attempt to Repair the Roof

¶ 26 Case argues that, under the terms of the contract, he was excused from honoring the warranty because Pack attempted to repair the roof. Pack counters

that the roof leaked because Case breached the contract by installing a defective roof, and thus Pack had a duty to mitigate the damages occasioned by the leaking roof.

¶ 27 "[U]nder the doctrine of avoidable consequences the nonbreaching party has an active duty to mitigate his damages, and he 'may not, either by action or inaction, aggravate the injury occasioned by the breach.'" Mahmood v. Ross, 1999 UT 104, ¶ 31, 990 P.2d 933 (citation omitted).

¶ 28 Here, the trial court found that Case "breached his guaranty of warranty on the roof, in that the roof leaked within a two (2) year period." Therefore, Pack had the duty to mitigate his damages. Although the contract stated that "[a]ll roof repairs or maintenance during the warranty period or warranted roofs must be done by Contractor to maintain Contractor's warranty[,]" in light of the court's undisputed finding that Pack's actions did not void the warranty and the fact that the leaks were damaging the interior of the home, we conclude that Pack's attempt to mitigate his damages did not excuse Case's duty to perform under the contractual warranty. Thus, the trial court did not err when it awarded Pack damages for Case's breach of warranty.

### II. The Motion to Compel

¶ 29 Case next argues that the trial court erred in denying his motion to compel discovery. Specifically, Case asserts that the trial court abused its discretion when it refused to compel Pack to respond to interrogatories asking for (1) the names of the two dry wall workers and repair people with knowledge about alleged repairs and defects; (2) the names of all the people who worked on the house; and (3) the blueprints for the house.

¶ 30 We cannot conclude that the trial court abused its discretion when it denied Case's motion to compel. First, the record indicates that the repairs of both the interior and the roof were conducted by Pack, his son, and an employee of Pack.

---

8. Because of our ruling, we do not address the issue of the effect of Case's breach. See Hertz v. Nordic Ltd. Inc., 761 P.2d 959, 963 (Utah Ct.App.

1988) (stating "no one can avail himself of the non-performance of a condition precedent, who has himself occasioned its non-performance").

Prior to trial, Case was able to depose both Pack and his son and thereby ascertain the names of any workers who may have helped with the repairs. However, Case filed his motion to compel before he deposed Pack and Pack's son. On the facts of this case, regardless of whether the trial court exceeded its discretion by denying the motion to compel brought at such an early stage of discovery, Case could have renewed his motion to compel if he was unable to obtain the desired information through other discovery.

¶ 31 Second, it was well within the trial court's discretion to deny Case's motion to compel Pack to provide the names of all the persons who participated in the construction of Pack's house. Such a request is overly broad and unduly burdensome because many workers participated in the construction of the house.[9] Moreover, the majority of the workers involved in the construction of the house would not have set foot upon the roof of the house and would not have had any knowledge of the work conducted upon the roof. Therefore, these employees could not provide information relevant to the present case. Further, there is nothing in the record indicating Case had anything other than unlimited access to the roof or that the defects were there to be seen.

¶ 32 Finally, the trial court did not abuse its discretion when it refused to compel Pack to produce the blueprints for the house because Case could have obtained the blueprints from Salt Lake City. Indeed, Case eventually did obtain the blueprints from Salt Lake City. Thus, the trial court did not abuse its discretion when it denied Case's motion to compel.

### III. The Testimony of Richard Nelson

¶ 33 Case next argues that the trial court erred by allowing Richard Nelson to testify as an expert because 1) Pack failed to name or provide any information regarding Nelson in Pack's discovery response, and 2) Nelson was not qualified to testify as an expert.

¶ 34 First, although Pack failed to notify Case about Nelson in Pack's discovery response, the trial court did not abuse its discretion when it allowed Nelson to testify. Specifically, the trial court conducted a pretrial conference and set June 20, 1997 as the deadline for designating witnesses. Further, neither party objected to the June 20 deadline. Therefore, the trial court did not err by allowing Nelson to testify because Pack identified Nelson as a witness before the June 20 deadline expired.[10]

¶ 35 Second, the trial court did not abuse its discretion when it qualified Nelson as an expert even though his qualifications extended beyond roofing. Rule 702 of the Utah Rules of Evidence states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." "In applying Rule 702, Utah courts have stated that 'the critical factor in determining the competency of an expert is whether that expert has knowledge that can assist the trier of fact in resolving the issues before it.'" *In re G.Y.*, 962 P.2d 78, 83 (Utah Ct.App.1998) (citation omitted). Here, Nelson testified that he was a building inspector for Salt Lake City and had been employed as such for thirteen years. Case conducted voir dire of Nelson and disputed his qualifications; however, the trial court concluded: "I think, given his experience, the fact that somebody employs him to do this, I think he is what would be an expert." Because of Nelson's training and experience the trial court properly determined he was an expert, and the trial court did not abuse its discretion in allowing Nelson to testify.

### IV. The Trial Court's Reduction of Amount Claimed For the Extra Work

¶ 36 Case next argues that the trial court erred by reducing the amount Pack

---

9. Pack alleges that up to one hundred workers could have been involved.

10. We also note that Case could have requested a continuance of the trial pursuant to Rule 40 of the Utah Rules of Civil Procedure.

owed Case for the extra roofing repairs. The court found that an agreement had been reached which authorized Case to make the repairs. Further, the court recognized that Case made repairs to the damaged roof and that Pack owed Case for the repairs.[11] However, the court reduced the amount Case invoiced Pack by twenty percent. The court justified the twenty percent reduction by referring to Case's miscalculation of the square footage of the entire roof by a similar percentage. This was an arbitrary reduction, as admitted by the court, because the repair work for the extras was distinct and unrelated from the roofing job itself. Moreover, the court's reduction of the amount claimed for the extra work was inappropriate given that Pack never challenged the *amount* billed for the extra work.[12] As a result, the only evidentiary basis for the amount due was provided by Case. Thus, we reverse the trial court's reduction of the amount that Case claimed for the extra work and herewith modify its final award to reflect the total amount claimed for the extra work, giving Case an additional offset of $800.00.

## V. The Trial Court's Award of Attorney Fees

■ ¶ 37 Case argues that the trial court erred when it awarded Pack all of his costs and attorney fees because the trial court concluded that Case was entitled to twenty percent of his costs and attorney fees.

An award of attorney fees must be based on the evidence and supported by findings of fact. One who seeks an award of attorney fees, therefore, has the burden of producing evidence to buttress the requested award. When the evidence presented is insufficient, an award of attorney fees cannot stand. In this regard, we have mandated that a party seeking fees must allocate its fee request according to its underlying claims. Indeed, the party must categorize the time and fees expended for (1) successful claims for which there may be an entitlement to attorney fees, (2) un-successful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees. Claims must also be categorized according to the various opposing parties.

. . . .

The trial court should also document its evaluation of the requested fees' reasonableness through findings of fact. These findings should mirror the requesting party's allocation of fees per claims and parties and should support any award issued. They enable the reviewing court to make an independent review of the fee award, and whether the findings are sufficient to support the award is a question of law reviewed for correctness. The findings of fact, furthermore, should detail the factors considered dispositive by the trial court in calculating the award.

*Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998) (internal quotations and citations omitted).

¶ 38 Here the parties did not allocate their fee requests according to their underlying claims. Thus, the trial court's findings do not "mirror the requesting party's allocation of fees per claims." *Id.* Moreover, the trial court abused its discretion when it awarded Pack one hundred percent of his costs and attorney fees while awarding Case twenty percent of its costs and attorney fees. If the trial court found that Pack prevailed on all issues, and was thus entitled to all costs and attorney fees, then it does not follow that the court could award any costs and attorney fees to Case. On the other hand, if the court found that Case was entitled to twenty percent of its costs and attorney fees, then it follows that the court could not have awarded Pack one hundred percent of his costs and attorney fees. Consequently, the trial court exceeded its discretion when it awarded attorney fees and costs to the parties. Accordingly, we reverse the trial court's award of attorney fees and remand for the trial court to determine the appropriate award in accor-

---

11. Pack did not cross appeal the trial court's ruling that he owed Case for the extra repair work.

12. At oral argument, Pack acknowledged he did not challenge the amount charged for the extra repair work, rather he challenged the existence of a valid agreement concerning the work.

dance with the procedure outlined in *Foote.* *See id.*

## VI.  Fees on Appeal

¶ 39 Pack requests payment of his costs and fees incurred on appeal. "When a party who received attorney fees below prevails on appeal, 'the party is also entitled to fees reasonably incurred on appeal.'" *Valcarce v. Fitzgerald,* 961 P.2d 305, 319 (Utah 1998) (citation omitted).

¶ 40 Here, not only were both parties awarded fees below, but on appeal Pack prevailed on the issues regarding the breach of warranty, motion to compel, and admission of expert testimony, while Case prevailed on the issues regarding the trial court's reduction of the amount owed for the extra work and the court's award of attorney fees. Case, however, did not seek fees on appeal.

> While plaintiff did not hold on to all of his trial victory on appeal and some adjustment may be necessary so that he does not recover fees attributable to issues on which he did not prevail[,] ... he is properly regarded as the party who prevailed on appeal and is entitled on remand to an award of [his] attorney fees reasonably incurred on appeal.

*Gardner v. Madsen,* 949 P.2d 785, 792 (Utah Ct.App.1997) (citations and quotations omitted). Accordingly, we remand the case for an award and allocation of costs and attorney fees on appeal to Pack.

## CONCLUSION

¶ 41 The trial court did not exceed its discretion when it concluded that Pack's failure to pay the total amount billed by Case and Pack's attempts to repair the roof did not negate the contractual warranty. Likewise, the trial court did not exceed its discretion when it denied Case's motion to compel and when it allowed Nelson to testify as an expert witness. However, the trial court did exceed its discretion when it arbitrarily reduced the amount claimed by Case for the extra work performed on the roof. Further, the trial court exceeded its discretion when it determined that Pack was entitled to one hundred percent of his attorney fees, and Case was entitled to twenty percent of his attorney fees. Finally, because Pack prevailed on the majority of issues on appeal, including the most substantial issue—the breach of warranty issue—and because Case has not requested attorney fees on appeal, we conclude that Pack is "properly regarded as the party who prevailed on appeal and is entitled on remand to an award of [his] attorney fees reasonably incurred on appeal." *Id.* Thus, we herewith modify the trial court's damage award giving Case an additional offset of $800.00. Finally, we remand for the trial court to recalculate its award of attorney fees at trial, and calculate fees due Pack on appeal in accordance with this opinion.

¶ 42 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and WILLIAM A. THORNE, JR., Judge.