**Opinion issued September 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00317-CV

————————————

**PELCO CONSTRUCTION COMPANY, Appellant**

**V.**

**CHAMBERS COUNTY, TEXAS, KURT AMUNDSON, AND AMUNDSON CONSULTING, INC., Appellees**

---

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Case No. CV-26356**

---

## O P I N I O N

Pelco Construction Company filed suit against Chambers County, Texas, Kurt Amundson, and Amundson Consulting, Inc. over a construction contract. Chambers County counter-sued. The trial court granted summary judgment on liability in favor of Chambers County and Amundson Consulting on all claims in

the suit. The parties then proceeded to trial on Chambers County's damages for its breach of contract claim. The jury awarded Chambers County $151,879.50. The trial court granted Chambers County's motion for judgment notwithstanding the verdict and rendered a verdict of $404,179.31 in damages. In five issues on appeal, Pelco argues the trial court erred by (1) granting summary judgment in favor of Chambers County on both parties' breach of contract claims, (2) granting the judgment notwithstanding the verdict, (3) refusing to include a proper mitigation question in the jury charge, (4) granting summary judgment on Pelco's claims against Amundson Consulting, and (5) awarding attorneys' fees.

We reverse and remand for a new trial.

## Background

In 2008, Hurricane Ike landed on the Texas coast. Among the damage, the Oak Island firehouse was destroyed. Chambers County developed plans to rebuild the firehouse based on funding from the Federal Emergency Management Agency ("FEMA"). Chambers County solicited bids. As a part of that process, officials from Chambers County along with representatives of its architect, Dannenbaum Engineering Corp., and representatives of Amundson Consulting met with representatives of Pelco to discuss the project. Pelco alleges that, during that meeting, Amundson represented that FEMA had approved funding for the construction project.

2

Pelco bid on the project and was awarded the contract. During construction of the firehouse, Pelco submitted two applications for payment based on money it had already expended and earned. More than two months after Pelco submitted the first application for payment, Dannenbaum certified 90% of the application for payment. Chambers County paid the certified amount three days before certification. Over one month after Pelco submitted the second application for payment, Dannenbaum certified 90% of the application for payment. Chambers County paid the certified amount seven days after certification.

On October 28, 2010, Amundson called Pelco, instructing them to stop work on the project. According to Pelco, Amundson stated that FEMA had ordered the work to stop due to the project plans not being approved for funding. That same day, Dannenbaum sent a letter to Pelco instructing Pelco to stop work on the project. Dannenbaum explained in the letter that "[t]he ceasing of the construction operation is required while required administrative paper work for the construction of the project is reviewed and approved by FEMA." Dannenbaum said it would inform Pelco when work could resume.

Forty days later, Dannenbaum sent Pelco a letter instructing it to resume construction on the project. Pelco sent Dannenbaum a letter in response giving notice of its termination of the contract based on a certain provision of the contract.

Pelco subsequently filed suit against Chambers County, Dannenbaum, Amundson Consulting, and Amundson. The trial court dismissed Dannenbaum from the suit based on Pelco's failure to file a certificate of merit, and we affirmed.[1] Pelco asserted, among other things, a breach of contract claim against Chambers County. Pelco asserted fraudulent misrepresentation and negligent misrepresentation claims against Amundson and Amundson Consulting. Chambers County asserted a breach of contract counter-claim against Pelco.

In the course of litigation, the parties filed multiple motions for summary judgment. Ultimately, the trial court granted summary judgment against Pelco on its breach of contract claim. It also granted summary judgment on liability in favor of Chambers County on its breach of contract claim. Subsequently, the trial court granted summary judgment in favor of Amundson and Amundson Consulting on Pelco's fraudulent misrepresentation and negligent misrepresentation claims.

After all of the motions for summary judgment, the only issue remaining was Chambers County's damages on its breach of contract claim. After a jury trial, the trial court granted a motion notwithstanding the verdict and awarded Chambers County its full claim for damages and attorneys' fees.

---

[1] *See Pelco Constr., Inc. v. Dannenbaum Eng'g Corp.*, 404 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

**Summary Judgment**

In its first issue, Pelco asserts that the trial court erred by granting summary judgment on liability against Pelco and in favor of Chambers County on both parties' breach of contract claims. In its fourth issue, Pelco asserts that the trial court erred by granting summary judgment against Pelco on its fraudulent misrepresentation and negligent misrepresentation claims against Amundson and Amundson Consulting.

## A. Standard of Review

The summary-judgment movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a "traditional" summary-judgment motion asserted under Rule 166a(c), a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When it moves for summary judgment on a claim for which it bears the burden of proof, a party must show that it is entitled to prevail on each element of its cause of action. *See Parker v. Dodge*, 98 S.W.3d 297, 299 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The party meets this burden if it produces evidence that would be sufficient to support an instructed verdict at trial. *Id.*

In contrast, a party moving for traditional summary judgment on a claim for which it does not bear the burden of proof must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *See Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

After an adequate time for discovery, the party without the burden of proof may move for a no-evidence summary judgment on the basis that there is no evidence to support an essential element of the non-moving party's claim. TEX. R. CIV. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). Summary judgment must be granted unless the non-movant produces competent summary judgment evidence raising a genuine issue of material fact on the challenged elements. TEX. R. CIV. P. 166a(i); *Hamilton*, 249 S.W.3d at 426. A non-moving

6

party is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a (Notes & Comments 1997).

A no-evidence summary judgment motion is essentially a motion for a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). Accordingly, we apply the same legal-sufficiency standard of review that we apply when reviewing a directed verdict. *City of Keller*, 168 S.W.3d at 823. Applying that standard, a no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see City of Keller*, 168 S.W.3d at 810.

To determine whether there is a fact issue in a motion for summary judgment, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller,* 168 S.W.3d at 827). We indulge every reasonable

inference and resolve any doubts in the non-movant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

**B.      Pelco's Breach of Contract Claims**

It is undisputed that Pelco's December 14, 2010 letter terminating the construction contract would constitute a material breach of the contract. If there was a prior material breach by Chambers County, however, then the December 14 breach was excused. *See Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004) (holding prior material breach by one party excuses further performance of other party). Our inquiry is limited, then, to events before December 14, 2010.

At trial, Pelco identified a number of actions taken by Chambers County that it claimed constituted a prior material breach by Chambers County. On appeal, Pelco limits its argument to Chambers County's failure to pay the full amount invoiced in Pelco's first two requests for payment. Accordingly, we further limit our review to whether Chambers County's failure to pay the full amounts invoiced constitutes a prior material breach. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) ("We have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error."); *In re E.A.F.*, 424 S.W.3d 742, 749 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (same).

As an initial matter, Chambers County argues that the trial court resolved this issue as part of a no-evidence motion for summary judgment to which Pelco did not respond. Accordingly, Chambers County argues, the trial court's order on this motion presents an independent basis for upholding the trial court's ruling on liability. We disagree that this motion asserted a no-evidence motion for summary judgment on Pelco's breach of contract claim.

The no-evidence motion does not indicate it sought summary judgment on Pelco's breach of contract claim. For example, it is entitled "Defendant Chambers County, Texas' No Evidence and Traditional Partial Motion for Summary Judgment as to Plaintiff's Contract Termination Rights and Defendant's Breach of Contract Claim." While the title references Pelco's rights to terminate the contract, it only claims summary judgment on Chamber County's breach of contract claim.

More significantly, the substance of the no-evidence motion establishes that Chambers County did not move for summary judgment on Pelco's breach of contract claim. For a no-evidence motion for summary judgment, the movant must "state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i). This rule "does not authorize conclusory motions or general no-evidence challenges to an opponent's case." TEX. R. CIV. P. 166a (Notes & Comments 1997); *accord Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). In the motion, Chambers County asserted in its paragraph establishing the law relevant to no-

evidence motions that "Pelco still has presented no evidence that it was entitled to terminate the Contract under its terms." For its breach of contract claim, however, Pelco carried no burden of showing that it was entitled to terminate the contract. Instead, it was required to prove that Chambers County breached the contract. *See Bank of Tex. v. VR Electric, Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding elements for breach of contract include showing plaintiff performed or tendered performance and defendant breached contract).

Similarly, in its request for relief, Chambers County asked the trial court to "enter judgment in favor of Chambers County on *its* breach of contract claim *against* Pelco holding that Pelco breached its Contract with Chambers County by terminating the Contract and refusing to perform." (Emphasis added.) Chambers County makes no mention of Pelco's breach of contract claim and does not ask for relief on it.

Furthermore, shortly after it filed the no-evidence motion in question, Chambers County filed a traditional and no-evidence motion for summary judgment on Pelco's breach of contract claim. Pelco responded to that motion. Before it ruled on the no-evidence motion in question, the trial court had already granted Chambers County's motion for summary judgment on Pelco's breach of contract claim. Chambers County would have us hold, then, that the trial court's ruling on its motion for summary judgment on its breach of contract claim

10

constitutes a reconsideration of the claims that the court had already disposed of and that had been presented by the party that had already prevailed. The record does not support such a conclusion.

Turning to the traditional and no-evidence motion for summary judgment on Pelco's breach of contract claim, we must first consider whether Pelco carried its burden on Chambers County's no-evidence portion of the motion. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (holding, when party moves for summary judgment on both traditional and no-evidence grounds, appellate courts first address no-evidence grounds).

One of the grounds presented by Pelco for why it could proceed on its breach of contract claim was "Chambers County breached the contract by withholding the retainage funds owed to Pelco." All parties acknowledge that Peclo submitted three requests for payment to Chambers County, that Chambers County withheld 10% of the amount owed on the first two requests for payment, and that Chambers County has not paid any of the third invoice. The determination of whether timely performance—in this case, timely payment of full amounts of the invoices submitted—is a material term of the contract is typically a fact question for the jury. *Breof BNK Texas, L.P. v. D.H. Hill Advisors, Inc.*, 370 S.W.3d 58, 64 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.); *see also*

*N.Y. Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 215 n.1 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("The failure to make a complete payment when due under a contract may constitute a material breach.").

In its reply to Pelco's response to the motion for summary judgment, Chambers County asserts that it was only required to pay the amount certified by Dannenbaum. Because Dannenbaum only certified payment of 90% of the first two applications and because Dannenbaum never certified the third payment, Chambers County argues that it has not breached the contract. The contract provides, however, that [Dannenbaum] would "provide administration of the Contract as described in the Contract Documents and *will be the Owner's representative* (1) during construction [and] (2) until final payment is due . . . ." (Emphasis added.) It further provides that Dannenbaum, "*as a representative of*" Chambers County was required to periodically visit the site "to endeavor to guard [Chambers County] against defects and deficiencies in the Work." (Emphasis added.) Dannenbaum's authority under the contract to certify less than the full amount of the applications for payment is based on deficiencies in the work or monetary claims from other parties. Certification of payment constituted a representation by Dannenbaum to Chambers County "that the Work has progressed to the point indicated and that . . . the evaluation of the Work is in accordance with the Contract Documents." Certification of payment, then, is part of Dannenbaum's

administration of the contract, which Dannenbaum performed as Chambers County's representative. Accordingly, the responsibility to pay Pelco rests fully on Chambers County and any actions taken or recommendations made by Dannenbaum were performed as Chambers County's representative.

In its brief on appeal, Chambers County argues Pelco cannot prevail because it claims the breach was not material. For purposes of Pelco's breach of contract claim, we do not need to resolve this issue. The significance of a breach constituting a material breach is that it excuses the non-breaching party from continuing to perform the contract. *Mustang Pipeline*, 134 S.W.3d at 196. By contrast, if a breach is determined to be immaterial, "the non-breaching party is not excused from future performance but may sue for the damages caused by the breach." *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 654 (Tex. App.—Houston [1st Dist.] 2014, pet. filed); *see also Allied Capital Partners, LP v. Proceed Technical Res., Inc.*, 313 S.W.3d 460, 465 (Tex. App.—Dallas 2010, no pet.) (holding material breach does not excuse prior, partial breach). Proof that Chambers County's failure to pay the full amounts of the invoices is not a material breach, then, would not defeat Pelco's claim for breach of contract.

Finally, for its traditional motion for summary judgment on Pelco's breach of contract claim, Chambers County argued that, as a matter of law, it did not breach the portion of the contract requiring provision of reasonable evidence of

13

financial arrangements. Pelco's complaint on appeal concerns breach of contract based on Chambers County's failure to fully pay Pelco's invoices. This argument does not implicate any requirement to provide reasonable evidence of financial arrangements. Accordingly, this other argument does not defeat Pelco's breach of contract claim based on failure to pay the invoices.

We hold the trial court erred by granting summary judgment on Pelco's breach of contract claim. We sustain Pelco's first issue as it relates to Pelco's breach of contract claim.

## C.    Chambers County's Breach of Contract Claims

In a separate motion, Chambers County filed a traditional motion for summary judgment on its own breach of contract claim. The motion identifies Pelco's termination of the contract as the basis for Chambers County's breach of contract claim. The motion asserts Chambers County was entitled to summary judgment as to liability on this claim by purporting to defeat Pelco's bases for prior material breach.

Chambers County presented a number of arguments in its motion for why its failure to pay the full amount of any of the applications for payment does not constitute a material breach of the contract. First, Chambers County argues that the third application for payment was submitted to Chambers County with Pelco's termination letter. We agree—and Pelco does not dispute—that, because the third

application was submitted along with Pelco's termination letter, any failure by Chambers County to pay any validly incurred costs included in the application cannot constitute a *prior* material breach by Chambers County. *See Mustang Pipeline*, 134 S.W.3d at 196 (holding prior material breach by one party excuses further performance of other party). Our inquiry is limited, then, to Chambers County's withholding 10% from the first two payments.

Chambers County's primary argument for why it has not breached the contract based on withholding 10% from the payments to Pelco is that it was only obligated under the contract to pay what Dannenbaum certified for payment. As we have held, however, the contract established that Dannenbaum acted as Chambers County's representative when it certified the payable portion of Pelco's applications for payment. Accordingly, Chambers County bears the responsibility for any error in certifying less than the entire amount of the applications.

Chambers County presents two further arguments for why withholding 10% from the first two payments was not a breach: the contract permitted withholding a "retainage fund" from each payment and Pelco's work was defective, warranting withholding certain payments. We hold that neither of these claims has been established as a matter of law.

The only authority Chambers County cites to support its claims that the contract authorized it to withhold 10% of each payment as a retainage fund is

15

contained in the provisions concerning "final completion and final payment." Under those provisions, "[n]either final payment nor any remaining retained percentage shall become due until [Pelco] submits to" Dannenbaum certain documentation. The same provisions require consent of the surety when "the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents." Similarly, the provision concerning the application for payment requires the application to "reflect[] retainage if provided for in the Contract Documents." All of these provisions concern the effects if retainage is permitted. They do not, themselves, permit retainage. Accordingly, this does not establish as a matter of law that Chambers County was authorized to withhold 10% on all requests for payment submitted by Pelco.

For its claim that the contract permitted withholding payment based on defective work, the contract provides that, after Pelco submitted an application for payment, Dannenbaum could "withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect [Chambers County], if in [Dannenbaum]'s opinion" certain contractually required representations could not be made to Chambers County. In this circumstance, Dannenbaum was required to notify Pelco and Chambers County of the problems "within seven days after receipt of [Pelco]'s Application for Payment." It is undisputed that Dannenbaum never sent any notice of any problems, even beyond the seven-day limitation.

Moreover, Chambers County's proof in its motion for summary judgment that Pelco had performed defective work comes from seven lines in Amundson's deposition. In that portion of his affidavit, Amundson asserted that "[t]here were [three] construction issues early on in the project." Amundson described, "One of them was the piers that supported the structure, they were too high. There wasn't the right amount of rebar in the piers. And the actual orientation was off in the spacing." Even assuming this testimony is sufficient to establish as a matter of law that Pelco's work was deficient, it does not establish the significance of the deficiency or that the deficiency would warrant withholding at least 10% of each application for payment.

Finally, Chambers County argues that its withholding 10% of the applications for payment cannot defeat its breach of contract claim because withholding 10% was not a material breach. "The materiality of a breach—the question of whether a party's breach of a contract will render the contract unenforceable—generally presents a dispute for resolution by the trier of fact." *Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Mustang Pipeline*, 134 S.W.3d at 199 (identifying seven-factor test weighed in considering whether breach is material). Nevertheless, materiality can be established as a matter of law in certain circumstances. *See Mustang Pipeline*, 134 S.W.3d at 199–200 (holding contract "time is of the essence" provision

17

established as a matter of law that party's failure to meet deadline was material). Chambers County asserts it established immateriality as a matter of law.

Chambers County asserts that the withholding was immaterial because the amount withheld was so small, characterizing it as "2.6% of the Contract price for which 23% had already been paid." It asserts this is a nominal amount. *See id.* at 199 (identifying one factor for determining materiality as extent to which injured party will be deprived of benefit it reasonably expected). Regardless of how little the amount withheld is compared to the entire amount that eventually would have been paid, it nevertheless remains 10% of the amount that Pelco identified as money it had already expended and earned. Nothing in the case law supports Chambers County's claim that, as a matter of law, withholding 10% owed to a contracting party is a nominal amount.

The Utah Court of Appeals case that Chambers County relies on does not support its claim that it proved immateriality as a matter of law. In *Pack*, a dispute arose over the re-shingling of a roof. *Pack v. Case*, 30 P.3d 436, 439 (Utah Ct. App. 2001). After the work was done, the owner withheld $675 of the $8,775 billed. *Id.* The parties went to trial, and the owner prevailed. *Id.* at 439–40. On appeal, the roofer claimed that withholding $675 was a prior material breach that excused enforcement of the warranty provision of the contract. *See id.* at 440. The

Utah Court of Appeals upheld the trial court's determination that withholding 7.7% of the contract price did not constitute a prior material breach. *Id.* at 441–42.

Nowhere in *Pack* does the court hold that, as a matter of law, withholding 7.7% of the contract price is immaterial. Instead, the court of appeal reviewed the factual determinations of the trial court *after a full trial* and upheld that factual determination. *See id.* Accordingly, *Pack* has no bearing on whether withholding 10% from two applications for payment is immaterial as a matter of law.

Chambers County also argues that the amounts withheld were not material because they were never permanent. Instead, the amounts would be paid once the corrections to the work had been performed. This argument is premised on Chambers County's claim that there were, in fact, problems with Pelco's work that warranted withholding 10% of the applications for payment. This has not been established as a matter of law.

Lastly, Chambers County argues that Pelco's failure to follow the procedure under the contract for resolution of payment disputes prevents Pelco from claiming the withholding is a material breach. Section 4.3 of the contract establishes the procedure for certain disputes between the parties. The section defines a claim as "a demand or assertion by one of the parties seeking . . . payment of money . . . ." As an initial matter, it is not clear that this provision applies in this circumstance. The section provides more specifically that "[i]f [Pelco] believes additional costs is

involved . . . [the] Claim shall be filed in accordance with this Section 4.3." This suggests that other claims for payment of money do not fall under this provision. Otherwise, this requirement would be superfluous language. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (holding courts construe contract so that no provision is rendered meaningless).

Similarly, other provisions in the contract require resolution of disputes pursuant to section 4.3. For example, section 8.3 of the contract concerns "delays and extensions of time." That section explicitly provides, "Claims relating to time shall be made in accordance with applicable provisions of Section 4.3." The portion of the contract concerning applications for payment is article 9. No section of article 9 requires disputes to be resolved pursuant to section 4.3. *See Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) ("Courts strive to honor the parties' agreement and not remake their contract by reading additional provisions into it."). Instead, Article 9 contains its own dispute resolution provision for any failure by Dannenbaum to timely issue a certificate of payment or for any failure by Chambers County to timely pay the amount certified.[2]

---

[2] Although Pelco has raised complaints about Dannenbaum's failure to timely issue a certificate of payment, this appeal is concerned with Dannenbaum's certification—and Chambers County's payment—of less than the entire amount requested by Pelco without any notice of problems with Pelco's work.

20

Even assuming section 4.3 applies to the parties' dispute, however, this does not establish that any failure by Pelco to follow its procedures establishes that any breach by Chambers County is immaterial. Section 9.4.1 provides that, if it determined that there was a reason for withholding certification in whole or in part, Dannenbaum was required to provide Pelco with notice of its reasons. Section 9.5.1 provides that, after notice of deficiencies was provided, Pelco and Dannenbaum would discuss the matter to determine if they could agree on a revised amount. If the parties cannot agree on a revised amount, Dannenbaum then issues a certificate of payment for the lesser amount.

It is undisputed that Dannenbaum did not provide any notice to Pelco of any deficiencies in Pelco's work. Instead, Dannenbaum issued certificates of payment for less than the entire amount without attempting to see if the matter could be remedied by Pelco or if Pelco would agree that a lesser payment was warranted. In order to determine immateriality under this argument, then, we would have to hold that Dannenbaum's failure to provide notice and to give Pelco a chance to correct any mistakes was not material but that Pelco's failure to follow the claims procedure was material. Nothing in Chambers County's motion for summary judgment establishes this as a matter of law.

Accordingly, this dispute resolution provision is not applicable to the dispute at issue.

21

We hold that Chambers County did not establish liability as a matter of law on its breach of contract claim. We sustain Pelco's first issue as it relates to Chambers County's breach of contract claim.

## D.    Pelco's Claims against Amundson & Amundson Consulting

In its fourth issue, Pelco asserts that the trial court erred by granting summary judgment in favor of Amundson and Amundson Consulting[3] on Pelco's claims against them. After the trial court granted summary judgment on Pelco's and Chambers County's motions for summary judgment, Amundson Consulting filed a motion for summary judgment on Pelco's claims against it for fraudulent inducement and negligent misrepresentation.

The elements for fraudulent inducement are

> (1) the defendant made a false material misrepresentation with knowledge that it was false when made or that the defendant asserted without knowledge of its truth or falsity, (2) the defendant intended the misrepresentation to be acted on, (3) the plaintiff relied on the misrepresentation, and (4) the misrepresentation caused injury.

*Anglo-Dutch Petroleum Int'l., Inc. v. Case Funding Network, LP*, 441 S.W.3d 612, 627 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

---

[3]    For purpose of their motion for summary judgment, no distinction is created between Amundson and Amundson Consulting. Accordingly, we will refer to both parties collectively as Amundson Consulting.

The elements for negligent misrepresentation are

> (1) the representation was made by a defendant in the course of his business, or in a transaction in which he had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*Swank v. Sverdlin*, 121 S.W.3d 785, 802 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (citing *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

In its live pleading, Pelco identified two alleged fraudulent misrepresentations by Amundson Consulting: that the construction project was approved for funding by FEMA and that the order to stop working on the project came from FEMA. Pelco's claim for negligent misrepresentation was based only on the alleged representation that FEMA had ordered the stop on the construction project.

In its motion for summary judgment, Amundson Consulting argued that the justifiable reliance and proximate cause elements of both claims failed as a matter of law because the trial court had previously determined that Pelco was at fault for the breach of the construction contract. Assuming without deciding that Pelco's claims against Amundson Consulting rely on a determination that Pelco was not at fault for the breach of the construction contract, we have reversed the trial court's

rulings on this matter. Accordingly, this can no longer apply as a basis for summary judgment in Amundson Consulting's favor.

For the negligent misrepresentation claim, Amundson Consulting also argued that the claim failed based on Pelco's live pleading. *See Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 357 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding summary judgment is appropriate when plaintiff pleads facts affirmatively negating its cause of action). In this argument, Amundson Consulting relies on two assertions in Pelco's live pleading. The first assertion was that Amundson Consulting had represented to Pelco on April 26, 2010—before Pelco entered into the contract—that FEMA had approved funding for the project. The second assertion was that "FEMA first disputed whether the last amendment to the design was reimburseable" only after Pelco entered into the contract with Chambers County. Based on this, Amundson Consulting asserts that Pelco's pleadings establish as a matter of law that Amundson did not know that his alleged representation was false.

The fault with Amundson Consulting's reasoning is that the pleading also asserts that it was the "last amendment to the design" that Amundson Consulting and others presented to Pelco on April 26, claiming that it had been approved by FEMA for funding. While *previous* designs had been approved by FEMA at that time, the one shown to Pelco on April 26 had not. Based on Pelco's pleading, any

claim by Amundson Consulting that this amendment had been approved by FEMA could have been false or made without knowledge of its truth or falsity. *See Anglo-Dutch Petroleum*, 441 S.W.3d at 627.

Amundson Consulting further asserted in its motion for summary judgment that "the alleged misrepresentation was not false, because the Project was eventually constructed and reimbursed by FEMA." Amundson Consulting cannot establish that it did not make a false statement by claiming that the statement became true at some point in the future. *See id.* (holding element of fraudulent inducement is defendant made false material misrepresentation "with knowledge that it was false *when made*" (emphasis added)).

Next, Amundson Consulting asserted that any representations it made were on behalf of Chambers County and, accordingly, were integrated into the contract between Pelco and Chambers County, which contains a merger clause. "[F]raudulent inducement is almost always grounds to set aside a contract despite a merger clause, but in certain circumstances, it may be possible for a contract's terms to preclude a claim for fraudulent inducement by a clear and specific disclaimer-of-reliance clause." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 332 (Tex. 2011). Standard merger clause provisions that the contract supersedes prior representations is not sufficient to act as a bar to a fraudulent inducement claim. *Id.* at 334. The merger clause in the contract

25

between Pelco and Chambers County simply provides that "[t]he Contract represents the entire and integrated agreement . . . and supersedes prior . . . representations . . . either written or oral." We hold this is a standard merger agreement and cannot defeat a fraudulent misrepresentation claim. *See id.*

Finally, Amundson Consulting asserted that the fraudulent inducement claim fails because Pelco had no evidence that Amundson Consulting intended to induce Pelco's reliance. "Intent is a fact question within the realm of the trier of fact because it is dependent upon the credibility of witnesses and the weight to be given to their testimony." *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 199 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986)). "Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence." *Spoljaric*, 708 S.W.2d at 435. The fact that Amundson Consulting made these representations in the context of a presentation seeking Pelco's bid on the construction contract is some circumstantial proof that Amundson Consulting intended for Pelco to rely on its statements and to act on the statements.

We hold Amundson Consulting failed to establish as a matter of law that Pelco could not prevail on its fraudulent misrepresentation and negligent

misrepresentation claims against Amundson Consulting. We sustain Pelco's fourth issue.

## Attorneys' Fees

In its fifth issue, Pelco argues that, if we reverse the jury's damage award, we should also reverse the award of attorneys' fees. Because we have reversed the trial court's determination of liability on Chambers County's breach of contract claim, the court's damages award must also be reversed.[4] *See* TEX. R. APP. P. 44.1 ("The court may not order a separate trial solely on unliquidated damages if liability is contested."). Likewise, the attorneys' fees award must also be reversed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2015) (allowing award of attorneys' fees for breach of contract claim); *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009) (holding, to recover attorneys' fees under section 38.001, litigant must prevail on breach of contract claim). We sustain Pelco's fifth issue.

## Response to Dissent

The dissent identifies another matter that it claims was raised by Pelco and was adequately developed by Pelco: Pelco's Prompt Payment Act claims. Chambers County sought and obtained summary judgment on these claims in the same motion that it sought and obtained summary judgment on Pelco's

---

[4] Because we reverse the damage award, we do not need to reach Pelco's remaining issues concerning error during the trial on damages. *See* TEX. R. APP. P. 47.1.

27

breach of contract claim. The motion, however, separately argued the grounds for summary judgment on the breach of contract claim and on the Prompt Payment Act claims. Likewise, Pelco responded to each claim separately and presented different arguments for why each claim should survive.

On appeal, the entirety of Pelco's analysis concerning this matter is a one-sentence footnote, claiming "The trial court's denial of Pelco's motion for summary judgment on its Prompt Pay claims was also error, which requires reversal." Rather than considering this lone passage as a side note among the thirty-three substantive pages of the brief, the dissent would hold that the matter has been raised and requires reversal. Even if we agreed that this sentence-long footnote was Pelco's attempt to challenge the trial court's grant of summary judgment on its Prompt Payment Act claims, we could not hold that this sentence adequately developed the matter.

As stated, Chambers County raised grounds for granting summary judgment on Pelco's breach of contract claim separately from the grounds for granting summary judgment on the Prompt Payment Act claims, and Pelco responded to the claims separately. On appeal, Pelco does not address any of these individual grounds for summary judgment on the Prompt Payment Act claims or any of its individual responses. *See Britton v. Texas Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding, to obtain

reversal, "an appellant must attack all independent grounds supporting a judgment"). Likewise, Pelco does not explain whether it believes Chambers County failed to carry its initial burden on the Prompt Payment Act claims, Pelco carried its burden after it shifted, or both.

For the citation to legal authority, Pelco's one citation to one of the statutes in the Prompt Payment Act is contained in its argument that the Prompt Payment Act served as a basis to establish breach of contract. But the failure to make payments under the Prompt Payment Act does not establish a breach of contract. *See* TEX. GOV'T CODE ANN. § 2251.051(a) (Vernon 2008) (providing remedy for failure to make payments under act is *suspension* of performance). Otherwise, Pelco provides no citation to the act or any case law applying the act.

The dissent would hold that the arguments concerning breach of contract are sufficiently analogous, but making an analogous argument on appeal is not sufficient to address a separate matter before the trial court. *See Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639–40 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding argument on appeal must comport with argument raised before trial court). Accordingly, even if we agreed with the dissent that Pelco attempted to raise the grant of summary judgment on its Prompt Payment Act claims as an issue on appeal, we cannot agree that the one sentence devoted to the matter was

sufficient to develop the argument. Consequently, we express no opinion on the merits of whether summary judgment was appropriate for the Prompt Payment Act claims.

## Conclusion

We reverse the trial court's rendition of summary judgment on Pelco's breach of contract claim, Chambers County's breach of contract claim, and Pelco's fraudulent misrepresentation and negligent misrepresentation claims against Amundson and Amundson Consulting. We remand for a new trial on these claims.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Justice Huddle, concurring in part and dissenting in part.