**Opinion issued December 31, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00832-CV

————————————

### CHAMBERS COUNTY, TEXAS, Appellant

### V.

### PELCO CONSTRUCTION COMPANY, Appellee

On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Case No. CV26356

## MEMORANDUM OPINION ON REHEARING[1]

---

[1]  Appellee Pelco Construction Company moves for rehearing of our September 29, 2020 memorandum opinion and judgment. We deny the motion for rehearing but withdraw our September 29, 2020 opinion and judgment and issue this memorandum opinion and a new judgment in their stead. The disposition remains unchanged.

This is the third appeal involving a contract between Chambers County and Pelco Construction Company for the reconstruction of a hurricane-damaged fire station. Pelco sued Chambers County for breach of contract to recover unpaid work and lost profits and for interest and attorney's fees under the Prompt Payment Act.[2] Chambers County asserted a breach of contract counterclaim to recover the cost to complete the work and attorney's fees. After a jury trial on the parties' competing claims and a bench trial on attorney's fees, the trial court rendered judgment for Pelco. Both parties appealed.

In ten issues, Chambers County contends: (1) its governmental immunity from suit on Pelco's claims has not been waived; (2) Pelco did not prove or obtain a jury finding that it satisfied the conditions precedent to its contract claim; (3) the evidence was legally and factually insufficient to support the jury's findings on liability and damages; (4) Pelco engaged in improper jury argument; (5) the judgment includes an impermissible double recovery of interest; and (6) Pelco failed to segregate its proof of attorney's fees. And in two issues, Pelco contends the trial court abused its discretion by refusing to award all of the attorney's fees it seeks.

We affirm in part, reverse in part, and render judgment.

---

[2]   *See* TEX. GOV'T CODE §§ 2251.001–.055.

## Background

Hurricane Ike destroyed the Oak Island fire station in 2008. Chambers County developed plans with its architect, Dannenbaum Engineering Corporation, to rebuild the fire station based on funding from the Federal Emergency Management Agency ("FEMA"). Pelco was one of two qualified contractors that bid on the project. As the lowest bidder, at $565,000, Pelco was awarded the contract.[3]

The contract provided for progress payments to Pelco during construction. The contract designated Dannenbaum as Chambers County's "representative (1) during construction [and] (2) until final payment [was] due" and imposed upon Dannenbaum certain performance responsibilities. Based on its evaluations of Pelco's applications for payment, Dannenbaum was to "review and certify the amounts due" to Pelco and "issue certificates for payment . . . ."

Specifically, the contract provided that, "within seven days after the receipt of" Pelco's application for payment, Dannenbaum would either issue to Chambers County a certificate for payment for the amount Dannenbaum determined was "properly due" or notify the parties "in writing" of the reasons "for withholding certification in whole or in part." The issuance of a certificate for payment was "a

---

[3] The contract documents in this case include the American Institute of Architects ("AIA") A201-1997 "General Conditions of the Contract for Construction." Unless otherwise noted, the contract provisions discussed in this opinion are from the AIA A201-1997 contract.

3

representation by [Dannenbaum] to [Chambers County]" that the work had "progressed to the point indicated and that, to the best of [Dannenbaum's] knowledge, information and belief, the quality of the Work [was] in accordance with the Contract Documents."

During construction, Pelco submitted two applications for payment—it submitted the first application, on September 1, 2010, for $45,121.50 and the second application, on October 29, for $99,873.50. Dannenbaum certified the first application more than two months after it was submitted for 90% of the application amount. Chambers County paid the certified amount three days before the certification process was completed. Dannenbaum certified the second application more than one month after it was submitted, again for only 90% of the application amount. Chambers County paid the certified amount seven days after certification.

On October 28, the day before Pelco submitted its second application, Chambers County ordered work on the project to stop. Dannenbaum informed Pelco by letter that the "ceasing of the construction operations is required while required administrative paper work [sic] for the construction of the project is reviewed and approved by FEMA." Dannenbaum said it would inform Pelco when work could resume. According to Pelco, the order to stop work came as a surprise because representatives of Chambers County indicated in the bid-solicitation process that the FEMA had already approved the project.

4

About forty days later, Dannenbaum instructed Pelco to resume construction on the project. In response, on December 14, 2010, Pelco sent Dannenbaum a letter giving notice of its termination of the contract. The letter stated that Pelco had a right to terminate the contract because the "work-stoppage continued for forty consecutive days." Pelco demanded payment for the "[m]oney due and owing" on the two payment applications as well for additional "work now complete." Pelco submitted its third application for payment in the amount of $52,243.50 with the letter. Dannenbaum did not issue a certificate of payment for the third application, and Chambers County did not make any payment toward the amounts applied for in Pelco's third application.

Pelco subsequently filed suit against Chambers County and other defendants not parties to this appeal.[4] Pelco alleged that Chambers County materially breached the contract by "(1) failing, by itself, or through its representative, to timely certify for payment and/or pay Pelco['s] . . . first two payment applications, and (2) failing to pay 100% of Pelco['s] . . . first two applications, instead withholding, without prior written notice, 10% of the amounts due under each application." Pelco sought damages for the unpaid work already performed and for lost profits that it would

---

[4]    The other defendants included Dannenbaum. Because Pelco failed to file a certificate of merit as required by section 150.002 of the Texas Civil Practice and Remedies Code, the trial court dismissed Dannenbaum. We affirmed the dismissal in the first appeal in this case. *See Pelco Constr., Inc. v. Dannenbaum Eng'g Corp.*, 404 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

have earned under the contract. Pelco also asserted a claim for interest on the overdue payments and attorney's fees under the Prompt Payment Act. *See* TEX. GOV'T CODE §§ 2251.001–055.

Chambers County pleaded a breach of contract counterclaim against Pelco. Chambers County alleged that Pelco had materially breached the contract by "wrongfully terminat[ing] the contract based on the exercise of Chambers County's contractual right to temporarily suspend the project for approximately 40 days . . . [and] by failing and refusing to perform the contract as the contract required." The damages sought by Chambers County included its costs to complete the work and attorney's fees.

In the course of litigation, the trial court granted summary judgment against Pelco on its claims for breach of contract and violation of the Prompt Payment Act. The trial court also granted summary judgment on liability in favor of Chambers County on its counterclaim for breach of contract. After a jury trial on the sole issue of Chambers County's damages, the trial court rendered a judgment in favor of Chambers County. The case was then appealed to this Court a second time. We reversed and remanded for a new trial on both Pelco's claims and Chambers County's counterclaim.[5]

---

[5]     *See Pelco Constr. Co. v. Chambers Cty.*, 495 S.W.3d 514 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

6

After a new trial on remand on the parties' competing claims, the jury found that Chambers County breached the contract and Pelco did not. The jury then determined that Chambers County owed Pelco $52,243.50 for work already performed and that Pelco suffered $35,667.45 in lost anticipated profits as a result of Chambers County's breach. The jury also found that Chambers County violated the Prompt Payment Act by failing to timely pay Pelco's applications for payment.

By agreement, the parties tried the issue of Pelco's attorney's fees under the Prompt Payment Act to the bench. The trial court found that Pelco was entitled to some, but not all, of the attorney's fees requested and rendered judgment for Pelco in accordance with the jury's verdict. The judgment awards Pelco interest under the Prompt Payment Act on the unpaid amounts of the first, second, and third payment applications as well as prejudgment interest on the unpaid amounts and Pelco's lost anticipated profits.

## Governmental Immunity

In its ninth issue, Chambers County contends it is immune from suit on Pelco's claims for breach of contract and under the Prompt Payment Act. Pelco responds that section 262.007 of the Local Government Code—the County Contract Claims Act—waives Chambers County's immunity for each of the challenged claims. *See* TEX. LOC. GOV'T CODE § 262.007. Because a governmental entity's

7

immunity from suit affects the Court's jurisdiction, we address this issue first. *See Witchita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003).

## A. Local Government Code § 262.007

Under the doctrine of governmental immunity, a governmental entity, like Chambers County, cannot be sued without its consent. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006). Governmental immunity includes both "immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Id.* at 332. Both forms of immunity must be waived; however, only immunity from suit deprives the courts of jurisdiction and thus bars a claim against the governmental entity. *See id.*; *Wichita Falls State Hosp.*, 106 S.W.3d at 696.

By entering a contract, a governmental entity waives immunity from liability for breach of that contract, "voluntarily binding itself like any other party to the terms of the agreement, but it does not waive immunity from suit." *Tooke*, 197 S.W.3d at 332. Only the Legislature can waive an entity's immunity from suit by "clear and unambiguous" statutory language. TEX. GOV'T CODE § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."); *see*

8

*also Tooke*, 197 S.W.3d at 328–29 (agreeing that statutory waiver of immunity must be "by clear and unambiguous language").

Pelco pleaded section 262.007 of the Local Government Code as the basis for the waiver of Chambers County's immunity from suit in this case. In section 262.007, the Legislature has provided a limited waiver of a county's immunity from suit for claims "arising under" a construction contract. *See* TEX. LOC. GOV'T CODE § 262.007(a). The statute provides: "A county that is a party to a written contract for . . . construction services . . . may sue or be sued, plead or be impleaded, or defend or be defended on a claim arising under the contract." *Id.*

This immunity waiver is limited in terms of both the types of contracts under which a party can sue and the types and amounts of damages the party can recover. *See id.* § 262.007(b), (c); *see also Cty. of Galveston v. Triple B Servs., LLP*, 498 S.W.3d 176, 182 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (party must plead damages that are recoverable under the statute to meet requirements of immunity waiver). Subsection (b) of section 262.007 identifies the four categories of recoverable damages, and subsection (c) lists the three categories of unrecoverable damages. *See* TEX. LOC. GOV'T CODE § 262.007(b), (c). The recoverable damages are limited to:

> (1) the balance due and owed by the county under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

9

(2) the amount owed for change orders or additional work required to carry out the contract;

(3) reasonable and necessary attorney's fees that are equitable and just; and

(4) interest as allowed by law.

*Id.* § 262.007(b). The recovery of certain other damages, including "consequential damages, except as allowed under [s]ubsection (b)(1)," is prohibited. *Id.* at § 262.007(c)(1).

In interpreting section 262.007, our primary goal is to determine and give effect to the Legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). "We must enforce the statute as written and refrain from rewriting text that the lawmakers chose." *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014). We "apply the plain meaning . . . unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Id.* (internal quotations omitted).

## B. Pelco's Breach of Contract Claim

The parties' construction contract is within the category of contracts for which the Legislature waived immunity in section 262.007. *See* TEX. LOC. GOV'T CODE § 262.007(a) (including written contracts for "construction services"). Chambers County nevertheless argues that Pelco's claim for breach of the contract falls outside the scope of the waiver because the breaches alleged were based, "in whole or in

10

large part, on Dannenbaum's alleged failure to certify [p]ayment [a]pplications"; Dannenbaum is an entity over which Chambers County "exercised no control"; and thus the breach allegations concern "obligations Chambers County did not have under the [c]ontract." In other words, Chambers County argues that Pelco's claim is not one "arising under the contract" because Chambers County purportedly had no contractual responsibility for any errors in the certifications of payment. We disagree.

Although section 262.007 of the Texas Local Government Code does not define the phrase "arising under," those words must be afforded their plain meaning. *See Jaster*, 438 S.W.3d at 562. "The term 'arise' has broad meaning and includes 'to originate; to stem (from) . . . [t]o result (from),' and 'to originate from a specified source . . . to come into being . . . to become operative . . . to come about: come up: take place . . . to become apparent in such a way as to demand attention[.]'" *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 308 (Tex. 2015) (internal citations omitted). The word "under" means "subject to the authority, control, guidance, or instruction of." MERRIAM-WEBSTER (n.d., accessed Dec. 21, 2020); *see also* THE NEW OXFORD AMERICAN DICTIONARY 1840 (ed. 2001) ("as provided for by the rules of; in accordance with"); *see Powell v. City of Baird*, 128 S.W.2d 786, 790 (Tex. 1939) ("under" means "by authority of" when used in the phrase "under the laws of the State of Texas"). Applying these plain meanings to

11

the undefined statutory phrase, we conclude that a "claim arising under the contract" is a claim that originates from the contract and is subject to the contract.

Our prior opinion setting aside the summary judgment for Chambers County on Pelco's breach of contract claim did not consider that claim in the specific context of the statutory waiver of immunity at issue here, but we find the Court's interpretation of the contract persuasive on the issue now before us as to whether Pelco's particular claim "aris[es] under the contract." *See Pelco Constr. Co. v. Chambers Cty.*, 495 S.W.3d 514, 522 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). More specifically, in the prior appeal, Pelco argued that it could proceed on its claim because Chambers County breached the contract by retaining funds owed to Pelco. *Id.* Chambers County responded that it had not breached the contract because it was only required to pay the amount certified by Dannenbaum. *Id.* In rejecting Chambers County's argument, we interpreted the contract as follows:

> The contract provides . . . Dannenbaum would "provide administration of the Contract as described in the Contract Documents and *will be the Owner's representative* (1) during construction and (2) until final payment is due . . . .'" It further provides that Dannenbaum, "*as a representative of*" Chambers County was required to periodically visit the site "to endeavor to guard Chambers County against defects and deficiencies in the Work." Dannenbaum's authority under the contract to certify less than the full amount of the applications for payment is based on deficiencies in the work or monetary claims from other parties. Certification of payment constituted a representation by Dannenbaum to Chambers County "that the Work has progressed to the point indicated and that . . . the evaluation of the Work is in accordance with the Contract Documents." Certification of payment, then, is part of Dannenbaum's administration of the contract, which Dannenbaum

12

performed as Chambers County's representative. Accordingly, the responsibility to pay Pelco rests fully on Chambers County and any actions taken or recommendations made by Dannenbaum were performed as Chambers County's representative.

*Id.* (internal parentheticals and brackets omitted; emphasis in original). Stated differently, we concluded that the contract was not reasonably susceptible to a reading that divorced Chambers County from responsibility for Dannenbaum's errors in certifying less than the full amount of Pelco's payment applications. *See id.*

This interpretation applies equally under the statutory waiver of immunity for claims "arising under the contract." Because the contract designates Dannenbaum as Chambers County's agent and places the ultimate responsibility for payment on Chambers County, the breaches alleged by Pelco for failures related to the certification and payment of its payment applications originate from and are subject to the contract. Pelco's contract claim thus is one "arising under the contract." *See* TEX. LOC. GOV'T CODE § 262.007(a).

We note that for the immunity waiver in section 262.007 to apply to Pelco's breach of contract claim, the contract must be of the type for which immunity is waived and the claimed damages must be recoverable under the statute. *See Triple B Servs.*, 498 S.W.3d at 183. Although Chambers County challenges whether Pelco's lost profits are recoverable damages, it does not dispute that Pelco's claim for unpaid work falls within the scope of the immunity waiver. We agree that the unpaid work is recoverable under the statute. Subsection (b)(1) allows recovery of

13

"the balance due and owed by the county under the contract . . . ." TEX. LOC. GOV'T CODE § 262.007(b)(1). That phrase has been interpreted to mean "simply the amount of damages for breach of contract payable and unpaid." *Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 111 (Tex. 2014). As direct damages—the necessary and usual result of Chambers County's alleged wrongful act—Pelco's claim for unpaid work "certainly qualif[ies]." *See id.*

We therefore conclude that section 262.007 waives Chambers County's immunity from suit on Pelco's breach of contract claim. We overrule the portion of Chambers County's ninth issue asserting governmental immunity from suit on Pelco's breach of contract claim.[6]

## C. Pelco's Claim under the Prompt Payment Act

Chambers County further argues that it is immune from suit for interest and attorney's fees under the Prompt Payment Act. *See* TEX. GOV'T CODE §§ 2251.001–.055. The Prompt Payment Act requires a governmental entity, including a county, to make timely payments for goods and services purchased by contract. *See* TEX. GOV'T CODE § 2251.021. It sets forth a specified time by which payments must be made and provides for an interest penalty on overdue payments. *See id.*

---

[6] Given our disposition below of Chambers County's second issue—in which we conclude that Pelco did not establish the elements of its contract claim—we do not decide whether immunity is waived for Pelco's claimed lost profits. *See* TEX. R. APP. P. 47.1.

14

§ 2251.021(a) (time for payments); *id.* § 2251.025(a) (accrual of interest); *id.* § 2251.027 (interest owed by political subdivisions). It also permits an award of attorney's fees to the prevailing party. *Id.* § 2251.043 (attorney's fees).

Chambers County's claim of immunity rests on its assertion that the Prompt Payment Act itself does not include a clear and ambiguous wavier of immunity. But Pelco does not rely on the Prompt Payment Act to establish a waiver of Chambers County's immunity. As already stated, Pelco relies on section 262.007. *See* TEX. LOC. GOV'T CODE § 262.007(a). And the question of whether section 262.007 waives immunity from suit to recover interest under the Prompt Payment Act has already been decided by this Court. *See Triple B Servs.*, 498 S.W.3d at 187–89.

In *Triple B*, a road-expansion contractor's breach of contract suit against Galveston County included a claim for interest and attorney's fees under the Prompt Payment Act, and the county argued that there was no waiver of immunity for the Prompt Payment Act claims. *See id.* at 178–79. We rejected the county's argument, holding:

> Based on the plain text of [s]ection 262.007, a county may be sued for late payment and "interest as allowed by law." Because the [Prompt Payment Act] allows a contractor to recover interest from a county for late payment, the interest sought by Triple B is "interest allowed by law"—namely, allowed by the [Prompt Payment Act]—for which immunity is waived.

*Id.* at 188 (citation omitted); *see also* TEX. LOC. GOV'T CODE § 262.007(b)(4) ("The total amount of money recoverable from a county on a claim for breach of the

15

contract is limited to . . . interest as allowed by law."). Applying the *Triple B* holding here, as we must, we conclude that section 262.007 waives immunity from suit for interest under the Prompt Payment Act. *See Triple B Servs.*, 498 S.W.3d at 188.

*Triple B* also addressed section 262.007's waiver of immunity for attorney's fees in suits against a county for breach of a construction contract, though to a more limited extent. *See id.* at 189. Specifically, the Court considered whether section 262.007 serves as a "substantive basis" for a claim of attorney's fees. *Id.* It does not. *Id.* at 189–90 (statute defines extent to which immunity is waived but does not create entitlement to recovery from county). But the Court noted that subsection (b)(3) "allows attorney's fees if another statute—or the contract—allows attorney's fees." *Id.* at 189. Because the contractor in *Triple B* had not pleaded the Prompt Payment Act or any other statute that was a valid basis for its attorney's fees, the Court concluded that the contractor was "not currently asserting an attorney's fee claim for which immunity has been waived." *Id.* at 190. The Court thus declined to address whether the contractor could have received attorney's fees under the Prompt Payment Act. *Id.* at 189 n.7.

Unlike the contractor in *Triple B*, Pelco has pleaded the Prompt Payment Act's provision for attorney's fees as the substantive basis for its claim. *See* TEX. GOV'T CODE § 2251.043 (in "judicial action to collect an invoice payment or interest due under this chapter, the opposing party, which may be the governmental entity or the

16

vendor, shall pay the reasonable attorney fees of the prevailing party"). And, relying on the same interpretation of a "claim arising under the contract" set out above, we conclude Pelco's claim for attorney's fees under the Prompt Payment Act falls within the scope of the immunity waiver in section 262.007. *See* TEX. LOC. GOV'T CODE § 262.007(a), (b)(3).

This is because Pelco's claim for attorney's fees under the Prompt Payment Act originates from and is subject to the contract. Although the Prompt Payment Act provides remedies for ensuring payment under a contract, it is not the source of any payment obligation. *Triple B Servs.*, 498 S.W.3d at 187 (citing *Billy Smith Enters. v. Hutchison Constr., Inc.*, 261 S.W.3d 370, 376 (Tex. App.—Austin 2008, pet. dism'd)). That is, the Act does not create an "independent obligation to pay monies not otherwise owed under the contract . . . ." *Billy Smith Enters.*, 261 S.W.3d at 376. Without the contract then, Pelco would not have a claim for attorney's fees under the Prompt Payment Act.

Pelco's attorney's fees claim thus is one "arising under the contract," and section 262.007 constitutes a waiver of Chambers County's immunity on the claim. We overrule the portion of Chambers County's ninth issue asserting governmental immunity from suit on Pelco's breach of contract claim.

17

**Jury Charge**

In its second issue, Chambers County argues that the trial court erred in rendering judgment for Pelco on its breach of contract claim and Prompt Payment Act claims because Pelco did not "prove or obtain a jury finding that it satisfied all conditions precedent necessary to terminate and recover under the contract." More specifically, Chambers County argues that provisions of the contract required Pelco to provide Chambers County with written notice and an opportunity to cure as a condition precedent to Pelco's termination of the contract and assertion of claims for recovery of money damages under the contract. And in the absence of a jury finding or conclusive evidence of performance or excused performance of all conditions precedent, Chambers County contends that Pelco waived its recovery under the contract. We agree.

**A.      Pelco's Breach of Contract Claim**

Performance of a condition precedent is an essential element of a party's breach of contract claim. *See Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998); *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992) ("A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation."); *Emerald Forest Util. Dist. v. Simonsen Constr. Co.*, 679 S.W.2d 51, 54 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("When a contract provides for a particular form of notice, compliance with

such provisions is a condition precedent to invoking the contract rights which are conditioned on the notice.").

We determine whether a contractual provision is a condition precedent, or merely a covenant,[7] by examining the contract to ascertain the parties' intent. *See Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). "Our goal is to determine whether the parties intended that the right or responsibility at issue be conditional." *Arbor Windsor Court, Ltd. v. Weekley Homes, LP*, 463 S.W.3d 131, 136 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

To glean the parties' intent to create a condition precedent, we look for conditional language such as "if," "provided that," or "on condition that." *Criswell*, 792 S.W.2d at 948. The conditional language must connect the condition precedent to the conditioned obligation. *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 110 (Tex. 2010) (rejecting notion that conditioning some obligations necessarily operates to condition others).

Our task is to construe the entire agreement, and that task is not altered by the parties' use of "magic words" in the contract or the absence of such words. *See Criswell*, 792 S.W.2d at 948 ("While there is no requirement that such phrases be utilized, their absence is probative of the parties intention that a promise be made,

---

[7] A covenant is "an agreement to act or refrain from acting in a certain way." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010). The remedy for a party's breach of a covenant is a claim for damages. *See id.*

rather than a condition be imposed."). "In construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible." *Id.*

## 1. Written notice is a condition precedent

Turning to Chambers County's argument regarding interpretation, Chambers County contends certain written notice and cure provisions in the contract addressing "Claims and Disputes" (section 4.3 through 4.6), work stoppage for failure of payment (section 9.7.1), and termination by Pelco (sections 14.1.1.3 and 14.1.3) are conditions precedent to Pelco's assertion of a claim and any recovery.

Specifically, section 4.3 addresses "Claims and Disputes" and defines a "Claim" as follows:

> A claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims *must be initiated by written notice*. The responsibility to substantiate Claims shall rest with the party making the Claim.

(Emphasis added.) Subsection 4.3.2 requires that "Claims by either party must be initiated within 21 days after the occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later," and instructs that "Claims *must be initiated by written notice to the Architect and the other party*." (Emphasis added.) Subsections 4.3.4

20

through 4.3.10 address specific examples of "Claims," such as claims for concealed or unknown conditions, claims for additional cost, claims for additional time, claims relating to injury or damage to person or property, and claims for consequential damages.

The contract then establishes a specific procedure for "Resolution of Claims and Disputes." It expressly requires that Claims be referred initially to the project architect—here, Dannenbaum—for decision as a "condition precedent" to any litigation. Specifically, subsection 4.4.1 states:

> **Decision of Architect.** Claims, including those alleging an error or omission by the Architect but excluding those arising under Sections 10.3 through 10.5,[8] *shall* be referred initially to the Architect for decision. An initial decision by the Architect *shall be required as a condition precedent to mediation, arbitration, or litigation of all Claims* between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision have been rendered by the Architect.

(Emphasis added.) And the dispute-resolution procedure includes additional steps beyond the initial decision from the architect, Dannenbaum. Subsection 4.5.1 provides that after Dannenbaum's initial decision "or 30 days after submission of the Claim to [Dannenbaum]," any "Claim arising out of or related to the Contract . . . shall . . . be subject to mediation *as a condition precedent to arbitration or the*

---

[8] Sections 10.3 and 10.5 of the General Conditions relate to hazardous materials and the remediation of hazardous materials.

*institution of legal or equitable proceedings* by either party." (Emphasis added.)

Subsection 4.6.2 further provides that "[c]laims not resolved by mediation *shall be decided by arbitration. . . .*" (Emphasis added.)

Subsection 4.3.3 also mandates continuing contract performance "[p]ending final resolution of a Claim except as otherwise agreed in writing or as provided in Section 9.7.1 and Article 14." As indicated in subsection 4.3.3, sections 9.7.1 and article 14 set out the circumstances under which Pelco, as the contractor, need not continue its work under the contract pending final resolution of a Claim. Under the heading "Failure of Payment," section 9.7.1 provides:

> If the Architect does not Issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, *upon seven additional days' written notice to the Owner and Architect,* stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

(Emphasis added.)

Article 14 then establishes the procedure for "Termination or Suspension of the Contract." Subsection 14.1 addresses termination by Pelco as the contractor. In subsection 14.1.1.3, Pelco is authorized to terminate the contract "if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor"

22

for a number of reasons, including "[b]ecause the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate of Payment within the time stated in the Contract Documents[.]"  The contract further provides that if these circumstances exist,

> the Contractor may, *upon seven days' written notice to the Owner and Architect*, *terminate the Contract <u>and</u> recover from the Owner payment for Work executed and for proven loss* with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

(Emphasis added.)  Subsection 13.3 further specifies how written notice required by the contract must be served.

Chambers County construes these provisions together to require Pelco to provide Chambers County with written notice and an opportunity to cure as a condition precedent to Pelco's recovery for breach of contract.  Although the contract does not include language expressly providing Chambers County "opportunity to cure," Chambers County asserts that is the intention of the seven-day notice provisions and the dispute-resolution procedures that are expressly conditions precedent to mediation, arbitration, or any litigation between the parties.  Construing the contract as a whole, we are compelled to agree with this construction.

First considering the language included by the parties in these provisions, we note that each of the remedies available to Pelco—to stop work until an amount owed

23

has been paid, to terminate the contract if work has been stopped for at least 30 consecutive days through no fault on the part of Pelco, and to recover from Chambers County for "Work executed and for proven loss"—are conditioned "upon" a seven-day written notice provision. The language used is conditional according to its plain meaning. *See Criswell*, 792 S.W.2d at 948 (presence or absence of "magic words" does not determine existence of condition precedent); *see also Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) ("The goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used.").

Important here, section 14.1.3 permits Pelco to "terminate the Contract and recover from [Chambers County] for Work executed and for proven loss with respect to . . . profit and damages" "*upon* seven days' written notice" to Dannenbaum and Chambers County.[9] (Emphasis added.) The word "upon," according to its plain meaning, is a preposition synonymous with "on" and is used to show that something happens soon after, and often because of, something else—in this contract, Pelco's termination of the contract and recovery of damages from Chambers County following notice. *See* MERRIAM-WEBSTER (n.d., accessed Dec. 21, 2020). Stated differently, written notice must precede Pelco's recovery under the contract "for

---

[9] As set out above, section 9.7.1 also conditions work stoppage "upon" written notice to Dannenbaum and Chambers County.

Work executed and for proven loss with respect to . . . profit and damages." *See Arbor Windsor*, 463 S.W.3d at 139 (holding "prior to" in notice-of-default and cure provision demonstrated condition precedent to invoking remedies for breach); *Dallas Berkshire Partners, Ltd. v. James French Photography, Inc.*, No. 05-98-01352-CV, 2001 WL 200144, at *5 (Tex. App.—Dallas Mar. 1, 2001, pet. denied) (mem. op.) (holding "unless" in notice-of-default provision demonstrated condition precedent to recovery for breach).

To conclude that the parties did not intend for written notice to be a condition precedent to Pelco's assertion of a Claim and any recovery under the contract would require us to ignore the plain meaning of the language used by the parties in those sections of the contract and in the contract as a whole.

In that regard, the contract's provision in subsection 14.1.3 for Pelco's recovery "for Work executed and for proven loss with respect to . . . profit and damages" corresponds with the definition of a "Claim" under section 4.3, which speaks in terms of "a demand or assertion by one of the parties seeking, as a matter of right, [a] payment of money [or] relief with respect to the terms of the Contract." It is broad enough to include instances where, as here, the party initiating the Claim asserts it is entitled to payment under the existing terms of the contract.[10]

---

[10] A broad interpretation of "Claims" to include Pelco's claims for unpaid work and lost profits is consistent with the interpretation of other courts considering the scope of the same definition under the AIA standard form. *See, e.g., Hartford Cas. Ins.*

25

The specific examples of Claims in subsections 4.3.4 through 4.3.10 of the contract do not limit the definition of a Claim or otherwise narrow its scope to exclude Pelco's breach of contract claim seeking to recover for unpaid work and lost profits. Instead, these provisions merely incorporate additional procedures for specific types of Claims. For example, section 4.3.5's provision for "Claims for Additional Cost" requires a contractor who wishes to "make [a] Claim for an increase in the Contract Sum" to provide written notice of the claim "before proceeding to execute the work." Even if the definition of a Claim reasonably could be read more narrowly, at the very least, Pelco's claims for unpaid work and lost profits under the contract are "disputes . . . between [Chambers County] and [Pelco] arising out of or relating to the [c]ontract" and, thus, would still be subject to the contract's provisions governing Claims.

Sections 4.3.1 and 4.3.2—consistent with section 14.1.3—state that Claims "must be initiated by written notice," which then triggers the procedures for resolution of Claims. As stated above, section 4.4.1 expressly instructs that a referral

_Co. v. MDI Constr., L.L.C._, Civil Action No. 10-4369, 2012 WL 4970210, at *2 (E.D. La. Oct. 17, 2012) ("The law of the contract is clear: Any claim relating to the Contract must be initiated by written notice to the project architect . . . ."); _RCR Bldg. Corp. v. Pinnacle Hosp. Partners_, No. M2012-00286-COA-R3-CV, 2012 WL 5830587, at *10 (Tenn. Ct. App. Nov. 15, 2012) ("The definition of a Claim is certainly broad enough to include instances where the party initiating the Claim is entitled to payment under the existing terms of the contract."); _Metzler Constr. Co. LLC v. Stephens_, 774 F. Supp. 2d 1073, 1081 (D. Haw. 2011) (rejecting narrow definition of "Claims").

26

to Dannenbaum for a decision, as the architect, is "a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due" and thus reinforces a construction of the contract that makes providing timely written notice a condition precedent to Pelco's assertion of a Claim under the contract and any recovery.

These contractual provisions must be construed in harmony to require written notice of a Claim as a condition precedent to the initiation of a Claim and to any recovery for the unpaid work and lost profits sought by Pelco in the trial court. *See Arbor Windsor*, 436 S.W.3d at 137–41. Otherwise, the dispute-resolution procedures set out in article 4 which are triggered by the required written notice are either rendered meaningless or are in conflict with section 14.1.3. *See id.* at 141 (rejecting construction of contract which required court to give meaning to single phrase out of context of contract as whole).

Although Pelco does not dispute the written notice requirement or that an initial referral to Dannenbaum for a decision on a Claim was required, Pelco offers a two-fold response: (1) it was not required to prove it had a right to terminate the contract as part of its breach of contract claim, and (2) it has not asserted a "Claim" under the contract that is subject to the written notice and dispute-resolution procedure. Both contentions are based on the Court's prior opinion in the summary

27

judgment appeal, which Pelco asserts resolved the condition precedent issue in its favor.

Specifically, Pelco's first argument is based on the following discussion in the Court's prior opinion:

> For its breach of contract claim, however, Pelco carried no burden of showing that it was entitled to terminate the contract. Instead, it was required to prove that Chambers County breached the contract.

*Pelco Constr.*, 495 S.W.3d at 521 (citation omitted). While Pelco may not have been required to prove that it was entitled to terminate the contract in order to assert that Chambers County had breached the contract, that is a different question than the one presented in this appeal. Here, the question presented is whether Pelco satisfied any condition precedent to its initiation of a Claim and recovery under the contract. And both section 4.3—regarding Claims for "[a] payment of money [or] relief with respect to the terms of the Contract"—and section 14.1.3—permitting recovery from Chambers County "for payment for Work executed and for proven loss with respect to . . . profit and damages"—are conditioned upon providing written notice. We thus do not agree that the Court's prior opinion is dispositive of the condition precedent issue presented for our review in this appeal.

Likewise, Pelco misses the mark with its second contention that this Court previously rejected Chambers County's argument that Pelco could not recover

28

damages unless it followed section 4.3. That argument is based on the following discussion in the Court's prior opinion:

> Section 4.3 of the contract establishes the procedure for certain disputes between the parties. The section defines a claim as "a demand or assertion by one of the parties seeking . . . payment of money . . . ." As an initial matter, it is not clear that this provision applies in this circumstance. The section provides more specifically that "[i]f [Pelco] believes additional costs is involved . . . [the] Claim shall be filed in accordance with this Section 4.3." This suggests that other claims for payment of money do not fall under this provision. Otherwise, this requirement would be superfluous language.
>
> Similarly, other provisions in the contract require resolution of disputes pursuant to section 4.3. For example, section 8.3 of the contract concerns "delays and extensions of time." That section explicitly provides, "Claims relating to time shall be made in accordance with applicable provisions of Section 4.3." The portion of the contract concerning applications for payment is article 9. No section of article 9 requires disputes to be resolved pursuant to section 4.3.

*Pelco Constr. Co.*, 495 S.W.3d at 525–26 (citations omitted).

The Court's prior opinion setting aside the summary judgments for Chambers County did not decide, or even consider, whether proving written notice of a Claim was a condition precedent to Pelco's assertion of a Claim under the contract and any recovery for breach of contract in this litigation. *See id.* The discussion on which Pelco relies is found in the portion of the Court's opinion evaluating whether Chambers County was entitled to judgment as a matter of law on its counterclaim because "Pelco's failure to follow the procedure under the contract for resolution of payment disputes prevent[ed] Pelco from claiming the withholding [was] a [prior]

29

material breach." *Id.* at 525. That, again, is a different question than the one presented in this appeal concerning whether written notice is a condition precedent.

And the qualifying language in the Court's discussion—the language noting "it is not clear that [section 4.3] applies" and "suggest[ing]" that the scope of the provision may be limited to claims for payment of money that involve additional costs—merely indicates the existence of a question as to the dispute-resolution procedure's application. *See id.* It does not purport to resolve that question. *See id.* It is dictum. *See Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("Dictum is an observation or remark made concerning some rule, principle, or application of law suggested in a particular case, which observation or remark is not necessary to the determination of the case."). The Court's prior holding was only that Chambers County's summary judgment motion did not establish the immateriality of the retainage withholding on Pelco's first and second payment applications as a matter of law. *See Pelco Constr. Co.*, 495 S.W.3d at 525–26.

We hold here that providing written notice as required in sections 4.3.1 and 4.3.2—for assertion of a Claim—and in section 14.1.3—for any recovery from Chambers County "for Work executed and for proven loss with respect to . . . profit and damages"—as further specified by subsection 13.3—is a condition precedent to Pelco's recovery for breach of contract in this case. *See Arbor Windsor*, 436 S.W.3d

30

at 137–41; *see also Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 826 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (construing notice provisions as conditions precedent to suit). The record demonstrates that Pelco never served the required written notice to Chambers County.

## 2. Pelco did not obtain a jury finding

We next consider whether Pelco waived its recovery by failing to submit the performance of the condition precedent as an element of its breach of contract claim. Even though Pelco's performance of the condition precedent was an essential element of its recovery for breach of the contract, Pelco did not obtain a jury finding on its performance of the condition precedent, on waiver, or on any excuse for failing to perform the condition precedent. Chambers County objected to the omission of a condition precedent question from the court's charge.[11]

---

[11] On rehearing, Pelco argues that Chambers County did not preserve its objection to the omission of a condition precedent question because the proposed instruction that Chambers County submitted contemporaneously with its objection and tendered question regarding "all of the conditions precedent to the contract set forth below" did not specifically reference the contract's dispute resolution procedure. But Pelco's proposed instruction accompanying its tendered question does specifically reference the written notice requirement in the contract regarding work stoppage, termination of the contract, and, importantly, enforcement of the contract. Because Chambers County's objection to the omission of a condition precedent question placed the burden of submitting a correct question on Pelco, as the party with the burden of proof on this issue, this issue is preserved. *See McKinley v. Stripling*, 763 S.W.2d 407, 410 (Tex. 1989); *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 565 (Tex. 2002).

31

If an essential element of a ground of recovery is submitted to the jury over the objection of the party without the burden of proof, the party who objected to the partial submission is entitled to judgment, even if the jury returns a finding on the submission in favor of the party with the burden of proof. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). That is, "when a disputed and essential issue is omitted over the objection of a party, the appellate court must find that the party waived that element and by so doing did not meet the burden placed on him by law." *Winfield v. Renfro*, 821 S.W.2d 640, 657 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (op. on reh'g); *see also* TEX. R. CIV. P. 279; *Payne*, 838 S.W.2d at 241; *McKinley v. Stripling*, 763 S.W.2d 407, 410 (Tex. 1989). "The objection or request places the burden of submitting a correct question on the party with the burden of proof, . . . and the result of that party's failure to submit a correct question after objection is waiver of the ground of relief." *Mangum v. Turner*, 255 S.W.3d 223, 227 (Tex. App.—Waco 2008, pet. denied); *see also McKinley*, 763 S.W.2d at 410; *Winfield*, 821 S.W.2d at 657.

Pelco argues that the absence of a jury finding on the condition precedent does not result in a waiver of its recovery here because the evidence established that its personnel "repeatedly implored Chambers County orally and in writing to make full and timely payments on its application" and followed the dispute-resolution procedure "to the letter." *See* TEX. R. CIV. P. 279 ("grounds of recovery or of defense

32

*not conclusively established* under the evidence and no element of which is submitted or requested are waived") (emphasis added); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 814–15 (Tex. 2005) ("uncontroverted issues need not be submitted to a jury at all"). The evidence to which Pelco refers includes testimony that Pelco personnel asked, orally and in writing, about the status of the unpaid payment applications. Pelco also cites the testimony of its bookkeeper, Charlotte Kramer, and the exhibits supporting her testimony, as evidence that Kramer sent Pelco's first application for payment to the County representative at Dannenbaum in September 2010 and then followed up by email or telephone at various times with Dannenbaum, the County Engineer, the County Auditor, and eventually the County Judge about the status of the application over the course of two months.

Although this may be some evidence that Pelco attempted more than once to inquire about the status of its payment application and obtain payment, there is no evidence in the record that Pelco ever served the requisite written notice, as specified by subsection 13.3 and required by subsections 4.3 and 14.1.3, for initiation of a Claim and any recovery of unpaid work or lost profits under the contract.

Because Chambers County properly objected to the omission of a condition-precedent question, Pelco, having failed to submit such an issue after objection, has waived its recovery for breach of the contract. *See* TEX. R. CIV. P. 279. In the absence of a finding or conclusive evidence of Pelco's performance of the

33

written notice condition precedent, there can be no recovery on Pelco's breach of contract claim. *See McKinley*, 763 S.W.2d at 410; *Winfield*, 821 S.W.2d at 657. Accordingly, we sustain Chambers County's second issue as to Pelco's breach of contract claim.[12]

## B.    Pelco's Claim under the Prompt Payment Act

Our disposition of Pelco's contract claim raises the additional question of whether Pelco's claim for interest and attorney's fees under the Prompt Payment Act survives or must also fail because the Prompt Payment Act does not create an independent entitlement to payment. *See Triple B. Servs.*, 498 S.W.3d at 187 (citing *Billy Smith Enters.*, 261 S.W.3d at 376). Stated differently, we must consider whether Pelco's waiver of its recovery under the contract negates the existence of an underlying payment obligation for the purpose of the Prompt Payment Act's interest penalty and attorney's fees provision. *See* TEX. GOV'T CODE §§ 2251.025, .027, .043. Applying the rules of statutory construction, we conclude it does.

Statutory construction presents a question of law. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the Legislature's intent. *Id.* We seek that intent "first and foremost"

---

[12]    Given our disposition of this issue, we do not reach Chambers County's third, fifth, or sixth issues challenging the sufficiency of the evidence to support the jury's liability and damages findings on Pelco's breach of contract claim. *See* TEX. R. APP. P. 47.1.

34

in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).

The Legislature has instructed that the rights and remedies in the Prompt Payment Act are not exclusive. *See* TEX. GOV'T CODE § 2251.055. As already described, a governmental entity's prime liability under the Prompt Payment Act is the imposition of an interest penalty on untimely payments for goods and services and an award of attorney's fees to the prevailing party. *See id.* §§ 2251.025, .027, .043. The Prompt Payment Act provides, in relevant part, that a "*payment* by a governmental entity . . . is overdue on the 31st day after the later of: (1) the date the governmental entity receives the goods under the contract; (2) the date the performance of the service under the contract is completed; or (3) the date the governmental entity receives an invoice for the goods or service." *Id.* § 2251.021(a) (emphasis added). The failure to timely make a payment, in turn, is the basis for the Prompt Payment Act's interest penalty—"[a] *payment* begins to accrue interest on the date the *payment* becomes overdue." *Id.* § 2251.025(a) (emphasis added). These provisions use the term "payment" to define the governmental entity's liability. *Id.*

35

§§ 2251.021, .025. And that term is statutorily defined to mean "money owed to a vendor."[13] *Id.* § 2251.001(4).

The Prompt Payment Act does not purport to create a right to payment beyond merely requiring that payments be made timely or else accrue interest. *See id.* §§ 2251.021, .025. Reading the Prompt Payment Act as a whole, it contemplates that a vendor's right to payment is governed by the contract between the governmental entity and the vendor. We therefore conclude that the Prompt Payment Act does not create an independent obligation to pay money not otherwise owed under the contract. *Cf. Billy Smith Enters.*, 261 S.W.3d at 376–77 (construing Prompt Payment Act's provisions for timely payment of "the appropriate share of the payment" to subcontractors as not imposing independent obligation to pay money not otherwise owed under contract).

The effect of our holding that Pelco has waived its claim for breach of the contract by failing to obtain a jury finding or conclusively establish that it complied with the written notice condition precedent is that Chambers County does not owe any amount under the contract. And under our construction of the Prompt Payment Act, absent a payment obligation under the contract, its remedies and requirements simply are not implicated. *See id.* We therefore hold that Pelco cannot recover

---

[13] As a "person who supplies goods or services to a governmental entity," Pelco is a "vendor." TEX. GOV'T CODE § 2251.001(10).

36

interest or attorney's fees under the Prompt Payment Act. Accordingly, we sustain Chambers County's second issue as to Pelco's claim under the Prompt Payment Act.[14]

## Sufficiency of the Evidence

In its first issue, Chambers County contends that the trial court erred by rendering an adverse judgment on its breach of contract counterclaim because the evidence is legally and factually insufficient to support the jury's finding that Pelco did not fail to comply with the contract.

To recover on its counterclaim, Chambers County had the burden to prove that Pelco failed to comply with the contract. *See Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (listing elements for breach of contract, including showing defendant breached contract). When, as here, the appellant challenges the legal sufficiency of the evidence supporting an adverse finding on which it had the burden of proof, the appellant must demonstrate that the evidence establishes, as a matter of law, all vital facts in support

---

[14] Because we have concluded that the Prompt Payment Act claim is not an independent basis for the recovery of interest and attorney's fees in this case, we do not reach Chambers County's fourth issue challenging the sufficiency of the evidence to support the jury's finding that Chambers County violated the Prompt Payment Act; Chambers County's seventh issue challenging the awards of interest in the judgment; or Chambers County's tenth issue challenging Pelco's attorney's fees. *See* TEX. R. APP. P. 47.1. We also do not reach Pelco's cross-appeal related to its own attorney's fees under the Prompt Payment Act. *See id.*

37

of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). And when the appellant challenges the factual sufficiency of the evidence supporting an adverse finding on which it had the burden of proof, the appellant must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

We measure the evidentiary sufficiency of the jury's finding that Pelco did not fail to comply with the contract against the charge given to the jury because Chambers County did not object to its submission. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228–29 (Tex. 2011). The jury charge included a single liability question on Chambers County's breach of contract counterclaim, asking: "Did Pelco [ ] fail to comply with the [c]ontract?" The charge instructed the jury that a "failure to comply must be material" and set out the factors for determining materiality in accordance with the Texas Supreme Court's decision in *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 199 (Tex. 2004).[15]

---

[15] These factors, which derive from the Restatement (Second) of Contracts, are (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (3) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances; [and] (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 199 (Tex. 2004) (citing RESTATEMENT (SECOND) OF CONTRACTS § 241).

Chambers County argues that the jury's finding that Pelco did not fail to comply with the contract is not sustainable because "uncontroverted evidence" at trial established that Pelco breached the contract by terminating the "[c]ontract in its December 14, 2010 letter, without ever utilizing any of the dispute resolution processes outlined in the [c]ontract." However, the only argument Chambers County makes in support of the materiality of these breaches is not based on the record developed at trial; instead, Chambers County rests its material-breach argument exclusively on this Court's prior opinion in the summary judgment appeal.

Specifically, Chambers County asserts: "In its prior opinion, this Court noted that Pelco's clear and unequivocal termination of the [c]ontract constituted an 'undisputed' material breach of the [c]ontract." Beyond this assertion, Chambers County does not, as the legal-sufficiency standard requires, identify any evidence presented *at trial* that established materiality as a matter of law or, as the factual-sufficiency standard requires, explain why the adverse jury finding is against the great weight and preponderance of the evidence presented *at trial*. *See Sterner*, 767 S.W.2d at 690; *Dow Chem. Co.*, 46 S.W.3d at 242; *see also* TEX. R. APP. P. 38.1(i) (appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

The Court's prior opinion in the summary judgment appeal does not compel us to set aside the jury's finding that Pelco did not fail to comply with the contract.

39

Again, any binding effect of the Court's prior opinion cannot be determined without a close review of its important facts. *See Edwards*, 9 S.W.3d at 313. The prior opinion must be considered in its specific context, which is an appeal of a summary judgment. *See id.*

In that specific summary judgment context, the Court noted that "[i]t [was] undisputed that Pelco's December 14, 2010 letter terminating the construction contract would constitute a material breach of the contract." *Pelco Constr. Co.*, 495 S.W.3d at 520. This was not a holding of the Court; the Court merely clarified the scope of the parties' dispute in the summary judgment appeal. *See id.* Although the materiality of the alleged breach by Pelco might have been undisputed by the parties in the prior summary judgment appeal, we do not evaluate the sufficiency of the evidence to support a jury finding based on the state of the summary judgment record. *Cf. City of Keller*, 168 S.W.3d at 810–22 (framing evidentiary sufficiency standard based on record developed before the factfinder). Rather, this case is now before us after a jury trial at which both parties' liability for alleged breaches of contract was hotly contested. There was no agreement as to the materiality of any breach by Pelco.

To the extent Chambers County's brief can be read to impliedly argue that the Court's clarifying statement on the scope of the prior summary judgment appeal is the law of the case, we reject that argument. The law-of-the-case doctrine does not

40

apply to questions of fact. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). And the materiality of a contract breach typically is a question of fact for the jury. *See Pelco Constr. Co.*, 495 S.W.3d at 522; *see also Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("The materiality of a breach—the question of whether a party's breach of contract will render the contract unenforceable—generally presents a dispute for resolution by the trier of fact."). As described above, nothing in the Court's opinion in the prior summary judgment appeal removed the issue of materiality from the province of the jury.

We therefore reject Chambers County's argument that this Court must set aside the jury's finding that Pelco did not fail to comply with the contract based on its "conclusion that Pelco committed an 'undisputed' material breach." Because that is Chambers County's exclusive argument as to the materiality element of its breach of contract counterclaim—meaning Chambers County has not identified any other reason why materiality was either established as a matter of law or why the adverse jury finding was against the great weight and preponderance of the evidence—we overrule Chambers County's first issue.

### Jury Argument

In its eighth issue, Chambers County contends that a new trial is required on its contract counterclaim against Pelco because Pelco's counsel made an improper jury argument. During rebuttal argument, Pelco's counsel stated:

41

> Mr. Harris' attorney at that time, . . . in his termination letter, not only did he refer to the retainage, he also referred to Section 14 of the contract which is in front of you, termination by the contractor. Chambers County's attorney is correct that the owner can terminate – can stop the contract. This paragraph right here says that if they stop the contract for 30 or more days, then we [Pelco] get some rights. We [Pelco] have some rights.

Chambers County objected that the contract "does not say that." The trial court overruled the objection, admonishing the jury that "[i]t's argument. You have the evidence before you." Chambers County did not offer any further explanation of its objection, though it complains now on appeal that the rebuttal argument was improper because the trial court had "already found in a prior summary judgment order that Pelco had no such right" to terminate and Pelco did not "plead that it had a right to terminate the [c]ontract based on" the provisions that were the subject of the rebuttal argument.

The Rules of Appellate Procedure require that, to preserve an allegation of error for appellate review, the record must show a timely objection stating the grounds for the requested ruling with enough specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *See* TEX. R. APP. P. 33.1(a)(1)(A). From the language used in the objection and the response of the trial court, it is apparent that the trial court did not perceive the objection to be directed at the alleged violation of a prior order or pleading rules. Rather, the record reflects that the trial court perceived the objection to be a

42

disagreement with Pelco's interpretation of the evidence. Nor can we say that the context of the objection makes the specific grounds now complained of clear. We therefore conclude that the error alleged was not preserved at trial pursuant to the Texas Rules of Appellate Procedure. *See Philllips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009) (objection to improper jury argument was not sufficiently specific to preserve error).

In addition, this is not the type of jury argument for which an objection is not required because the statement's prejudice was incurable. *See Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680 (Tex. 2008) (incurable jury argument is rare because "[t]ypically, retraction of the argument or instruction from the court can cure any probable harm"); *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979) (complaint must prove improper jury argument "was not curable by an instruction, a prompt withdrawal of the statement or a reprimand by the judge"). Incurable argument is that which strikes at the very core of the judicial process and may be raised even without timely objection. *See Peñalver*, 256 S.W.3d at 681–82. Cases finding incurable harm typically involve "unsubstantiated attacks on the integrity or veracity of a party or counsel, appeals to racial prejudice, or the like." *Phillips*, 288 S.W.3d at 883. Pelco's rebuttal argument regarding the contract's

termination provision is not of this same class of impropriety, and, considering the record as a whole, not so extreme as to be incurable even if it was improper.

Accordingly, we overrule Chambers County's eighth issue.

## Conclusion

We affirm the portion of the trial court's judgment denying Chambers County relief on its breach of contract counterclaim against Pelco. We reverse the remainder of the trial court's judgment and render judgment that Pelco take nothing on its breach of contract and Prompt Payment Act claims against Chambers County.

Terry Adams
Justice

Panel consists of Chief Justice Radack and Justices Hightower and Adams.